```
 1

 2     UNITED STATES BANKRUPTCY COURT

 3     SOUTHERN DISTRICT OF NEW YORK

 4
       -------------------------------x
 5
       IN THE MATTER OF:
 6
       EIGHT-115 ASSOCIATES, LLC          CASE NO. 20-11812-mg
 7
                                          CHAPTER 7
 8                   Debtor.
       -------------------------------x
 9     HARLEM MULTIFAMILY LLC,
                      Plaintiff,
10
       vs.                               ADV. 20-01314-mg
11
       EIGHT-115 ASSOCIATES, LLC,
12     (Successor by Conversion to
       EIGHT-115 ASSOCIATES, L.P.)
13                   Defendant.
       -------------------------------x
14
                    United States Bankruptcy Court
15
                    One Bowling Green
16
                    New York, New York 10004
17

18
                    Monday, November 30, 2020
19
                    3:00 P.M.
20
       B E F O R E:
21
       HON. MARTIN GLENN
22
       U.S. BANKRUPTCY JUDGE
23

24

25
```

2

```
1    EIGHT-115 ASSOCIATES, LLC, DEBTOR - 20-11812-mg

2

3    HEARING re Motion on behalf of the

4    Chapter 7 Trustee, Yann Geron, seeking

5    approval of a stipulation between the

6    trustee and the debtor's first priority

7    secured lender, Harlem Multifamily, LLC,

8    seeking approval of various forms of relief,

9    use of cash collateral and adequate

10   protection

11

12   ADV. HARLEM MULTIFAMILY LLC - 20-01314-m

13   vs. EIGHT-115 ASSOCIATES, LLC,

14   (Successor by Conversion to

15   EIGHT-115 ASSOCIATES, L.P.)

16

17   INITIAL CONFERENCE

18

19   9019 MOTION TO SETTLE

20

21

22

23

24   Transcribed by:  Acorn Transcripts, LLC

25
```

3

```
 1                    A P P E A R A N C E S

 2

 3     ROSEN & ASSOCIATES, P.C.

 4          Attorneys for Eight-115 Associates, LLC

 5          747 Third Avenue

 6          New York, New York 10017

 7     BY:  PARIS GYPARAKIS, ESQ.

 8

 9     KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP

10          Attorneys for Yann Geron, Trustee

11          200 West 41st Street, 17th Floor

12          New York, New York 10036

13     BY:  FRED STEVENS, ESQ.

14          KATHLEEN N. AIELLO, ESQ.

15

16     MCGRAIL & BENSINGER LLP

17          Attorneys for Daniel Reifer

18          888-C 8th Avenue #107

19          New York, New York 10019

20     BY:  DAVID C. MCGRAIL, ESQ.

21

22

23

24

25
```

4

```
 1                    A P P E A R A N C E S

 2

 3    ROSENBERG, MINC, FALKOFF & WOLFF LLP

 4          Attorneys for Anna Strasser

 5          122 East 42nd Street

 6          Suite 3800

 7          New York, New York 10168

 8    BY:  ARTHUR TISI, ESQ.

 9

10    CITY OF NEW YORK, LAW DEPARTMENT

11          Attorneys for the City of New York and Its Agencies

12          100 Church Street

13          New York, New York 10007

14    BY:  GABRIELA CACUCI, ESQ.

15

16    REITLER KAILAS & ROSENBLATT LLC

17          Attorneys for Chapter 7 Trustee

18          885 Third Avenue, 20th Floor

19          New York, New York 10022

20    BY:  YANN GERON

21

22

23

24

25
```

```
 1                    A P P E A R A N C E S

 2

 3    SCHWARTZ, SLADKUS REICH GREENBERG ATLAS LLP

 4          Attorneys for Daniel Reifer

 5          444 Madison Avenue

 6          New York, New York 10022

 7    BY:  JARED E. PAIOFF, ESQ.

 8

 9    KATSKY KORINS LLP

10          Attorneys for Secured Lender

11          605 Third Avenue

12          New York, New York  10158

13    BY:  STEVEN H. NEWMAN, ESQ.

14

15    KRISS & FEUERSTEIN LLP

16          Attorneys for Harlem MultiFamily LLC

17          360 Lexington Avenue, Suite 1200

18          New York, New York 10017

19    BY:  JASON LEIBOWITZ, ESQ.

20

21

22

23

24

25
```

EIGHT-115 ASSOCIATES, LLC - DEBTOR                 6

1                    P R O C E E D I N G S

2      (Call to order)

3              THE CLERK:  So calling the next two cases,

4      first case number is 20-11812, Eight-115 Associates, and

5      a related case and adversary proceeding, Harlem

6      Multifamily LLC v. Eight-155 Associates, Case No. 20-

7      1314.

8              Before we get started, just to let everyone

9      know, if they could make sure that they state their name

10     each time they speak on the Court record, and also, if

11     you have any electronic devices on in the background, any

12     cell phones or anything that might interfere with the

13     recording, please make sure you mute your line if you're

14     not speaking.

15             So, Mr. Gyparakis, can you please give your

16     appearance for us for the record?

17             MR. GYPARAKIS:  Yes.  Good afternoon.  Paris

18     Gyparakis, Rosen and Associates, Counsel to the debtor.

19             THE CLERK:  Thank you.

20             Mr. Newman.

21             MR. NEWMAN:  Yes.  Hi, could you hear me?

22             THE CLERK:  Yes, I can.

23             MR. NEWMAN:  Thank you.  This Steve Newman of

24     Katsky Korins LLP, on behalf of the secured lender.

25             THE CLERK:  Okay.  Are you appearing in the

                    EIGHT-115 ASSOCIATES, LLC - DEBTOR              7

1    main case or the adversary proceeding?

2              MR. NEWMAN:  In both cases.

3              THE CLERK:  Okay.  And you're also appearing on

4    behalf of the plaintiffs; is that correct?

5              MR. NEWMAN:  That's correct.

6              THE CLERK:  In the adversary.  Thank you so

7    much.

8              Mr. Geron?

9              MR. GERON:  Good afternoon.  This is Yann Geron

10   and I am the Chapter 7 Trustee.

11             THE CLERK:  Thank you.

12             Mr. Stevens?

13             MR. STEVENS:  Good afternoon, Ms. Anderson.

14   Fred Stevens, Klestadt Winters.  I'm counsel to the

15   Chapter 7 Trustee.

16             THE CLERK:  Thank you.

17             Ms. Aiello?

18             MS. AIELLO:  And this is Kathleen Aiello also

19   from Klestadt Winters on behalf of the Chapter 7 Trustee.

20             THE CLERK:  Thank you.

21             Ms. Cacuci?

22             MS. CACUCI:  Good afternoon, Your Honor.

23   Gabriela Cacuci for the City of New York and its agencies

24   in the main case and the adversary proceeding.

25             THE CLERK:  Thank you.

EIGHT-115 ASSOCIATES, LLC - DEBTOR                     8

1           Mr. McGrail.

2           MR. McGRAIL:  Good afternoon.  Dave McGrail,

3     McGrail and Bensinger, co-counsel to Daniel Reifer.

4           THE CLERK:  Thank you.  My apologies if I

5     mispronounce the last name.

6           Paioff?  Is that correct?

7           MR. PAIOFF:  That's correct.  Thank you very

8     much.  This is Jared Paioff, also counsel to Daniel

9     Reifer in both the bankruptcy proceeding and the

10    adversary proceeding.

11          THE CLERK:  Thank you.

12          Mr. Tisi.

13          MR. TISI:  Good afternoon.  Arthur Tisi for

14    Rosenberg, Minc, Falkoff & Wolff, appearing for creditor,

15    Anna Strasser.  Good afternoon.

16          THE CLERK:  Okay.  Thank you so much.

17          Mr. Leibowitz.

18          MR. LEIBOWITZ:  Good afternoon.  This is Jason

19    Leibowitz with Harlem Multifamily, LLC.

20          THE CLERK:  Okay.  Thank you.

21          Is there anyone's appearance that I missed?

22    This is -- these are the parties I have on the roster.

23      (Audio Feedback)

24          THE CLERK:  Who is speaking?  Okay.  Anyone

25    else that I missed?  These are the parties I have on the

Acorn Transcripts, LLC    www.acornfla.com    1-800-750-5747

EIGHT-115 ASSOCIATES, LLC - DEBTOR                    9

1   roster for this afternoon.

2        (No audible response)

3            THE CLERK:  Okay.  Thank you.  Judge, we're

4   ready.

5            THE COURT:  All right.  Thank you.  And

6   everybody, other than when you're speaking, please mute

7   your phone.  I think that was part of the problem.

8   Deanna was picking up the feedback, as was I.

9            All right.  So pending before the Court is the

10  motion on behalf of the Chapter 7 Trustee, Yann Geron,

11  seeking approval of a stipulation between the trustee and

12  the debtor's first priority secured lender, Harlem

13  Multifamily, LLC, seeking approval of various forms of

14  relief, use of cash collateral and adequate protection,

15  and a 9019 motion to settle the claims with the secured

16  lender.

17            Who's going to begin on behalf of the trustee?

18            MR. STEVENS:  Your Honor, thank you very much.

19  This is Fred Stevens.  If it please, Your Honor, I can

20  begin.

21            THE COURT:  Go ahead, Mr. Stevens.

22            MR. STEVENS:  Thank you.

23            Your Honor set forth exactly what was

24  returnable today.  It is the motion for approval of a

25  settlement which is, I think fairly characterized as a

EIGHT-115 ASSOCIATES, LLC - DEBTOR                    10

1    very comprehensive settlement to resolve essentially all

2    of the issues that would exist between the trustee and

3    debtor's estate and the senior secured lender.

4            There are, at present, just to set the stage

5    briefly, there are at present still three unresolved

6    objections.  Your Honor may only be aware of two of them,

7    so I will just outline them very, very briefly before

8    starting the presentation, and of course all the parties

9    will have their own characterizations and these are the

10   matters, so I don't in any way mean to characterize

11   theirs.

12           The first is an objection by an alleged

13   personal injury claimant, Ms. Anna Strasser.  We've made,

14   I think, significant strides in resolving that as well as

15   the creditor's motion to lift stay.  We're currently

16   going back and forth in the terms of a stipulation which

17   is still outstanding.  We have not yet resolved that, but

18   are hopeful and wanted the Court to be aware that we have

19   made those strides.

20           THE COURT:  As I understand it --

21           MR. STEVENS:  The second --

22           THE COURT:  -- there is insure -- there's

23   potential insurance that would cover the personal injury

24   claim.  Is that right?

25           MR. STEVENS:  That is our -- that is our view,

EIGHT-115 ASSOCIATES, LLC - DEBTOR            11

1    Your Honor, and we're certainly willing to stipulate to

2    grant the creditor stay relief with the standard claim

3    waiver in exchange for their being permitted to pursue

4    insurance.  I think most of the issues that we are

5    outstanding with the stipulation are with respect to

6    discovery and some finite points of the litigation.

7              THE COURT:  All right.  Go ahead, Mr. Stevens.

8              MR. STEVENS:  The second would be that of the

9    City of New York.  There are some disputes that came to

10   light over the weekend, regarding the quality and

11   sufficiency of the notice that was provided to the city,

12   so that's the reason that Your Honor does not see a

13   formal objection or we did not have an opportunity to try

14   to tackle those before.  Those are issues with respect to

15   respecting the city's senior liens with respect to real

16   property, or with respect to real property taxes and

17   certain violations, and some other matters which

18   corporation counsel will set forth when Your Honor

19   invites to hear from objectors.

20             We have spent a lot of time on the phone today.

21   Corporation counsel has been very generous with its time

22   in trying to address these issues today, as has lender --

23   the lender and its counsel.  So we are making every

24   effort to do that, but I cannot report that we are fully

25   resolved yet.  So we will set forth -- they'll set forth

EIGHT-115 ASSOCIATES, LLC - DEBTOR            12

1    those issues and we can address those and respond to them

2    when Your Honor invites.

3            And the third objection is that of the debtor's

4    primary equity holder, Daniel Reifer.  Mr. Reifer is also

5    individually and -- asserted through various entities, is

6    an alleged creditor, alleges to be the largest unsecured

7    creditor of the debtor's estate.  The parties have spent

8    some time to see if that objection could be resolved.

9    The parties got on a phone call on Friday and have

10   exchanged emails since.  Unfortunately, we've been

11   unable, today, to resolve those objections so those

12   remained outstanding going into today's hearing.

13           By way of some brief background, and I'll make

14   it brief, Your Honor.  Everyone is intimately familiar

15   with the case, but it bears some interesting traits.

16           The debtor is a real estate holding entity with

17   six multi-unit parcels of real property that are around

18   115th Street, bordering 8th Avenue and Frederick Douglas

19   Boulevard.  There's a total of 55 rent-stabilized rental

20   units between those six separate parcels.

21           This case was very interestingly filed as a

22   Chapter 7.  Usually when we are in this position it's

23   after there has been an unsuccessful Chapter 11

24   proceeding and a conversion.  This was actually filed

25   just as a bald Chapter 7.  It also followed a multi-year

EIGHT-115 ASSOCIATES, LLC - DEBTOR          13

1   dispute between the father, Stanley Reifer, who is the

2   general partner of the sole manager of the debtor, and

3   his son, Daniel Reifer who is the primary objector today

4   and as well as alleged creditor and the undisputed

5   significant equity holder in the debtor.

6          Both the Reifer parties allege significant

7   allegations of wrongdoing with respect to the debtor, and

8   those were unresolved heading into the Chapter 7 case.

9          The case also follows the maturity of the

10  secured loan, which was originally issued and held by

11  Signature Bank and then prior to being transferred to the

12  lender.  The loan is secured by a mortgage against all

13  the parcels as well as all the proceeds thereof via

14  standard security agreement.  The loan is also personally

15  guaranteed by Daniel Reifer.

16         And there was significant litigation, not

17  surprisingly, between the lender and the debtor.  The

18  lender attempting, of course, to foreclose on the

19  property and collect opponent's guarantee simultaneously,

20  and that's the adversary proceeding that was removed by

21  the lender and has a conference on before the Court, as

22  well as this hearing here.

23         I'd also note, because I believe it was noted

24  in the papers, but the debtor's principal, or indirect

25  principal, Stanley Reifer, filed his own Chapter 7

                    EIGHT-115 ASSOCIATES, LLC - DEBTOR            14

1    petition within a couple weeks --

2                THE COURT:  That's before Judge Wiles?

3                MR. STEVENS:  It is before Judge Wiles and

4    Salvatore LaMonica is serving as the Chapter 7 Trustee in

5    that matter.

6                So the stipulation, as I said at the onset, was

7    -- is a comprehensive resolution.  It is, to say the very

8    least, or was to say the very least, heavily negotiated.

9    It took a significant amount of time.

10               In entering into the case, the trustee found

11   himself in a really -- I wouldn't say it's unique, but

12   it's a difficult set of circumstances.  He's technically

13   in charge of multiple parcels of real property, but in

14   his view, it is likely -- very likely fully encumbered by

15   the lender's lien.  Of course, that's a -- is a matter of

16   contest, both in terms of the amount of the lien, which

17   is one of the primary facets of this resolution and

18   proposed settlement.  And also, it depends very heavily

19   on value, which is extraordinarily difficult to

20   determine, and I don't think anyone has a wonderful

21   handle on it and won't until we have an opportunity to

22   fully market the property.

23               The deal -- so the trustee found himself in a

24   position where if there was not an agreement between him

25   and the lender, then he was going to have no alternative

1    but to abandon the property.  He didn't see a sufficient

2    upside to warrant his exercise and control over the

3    property, litigating to completion any disputes with the

4    lender, and had no ability frankly, absent funding or

5    agreements with the lender, in order to pay a manager for

6    the property, or to exercise control of the lender's

7    collateral without doing it in a disputed fashion.

8         So the options from the trustee's perspective

9    were pretty simple.  He was either going to get an

10   agreement that he found acceptable and to be in the best

11   interest of the estate, or he was going to abandon the

12   property, of course on notice, with an opportunity for

13   parties-in-interest to object.

14        This settlement was negotiated.  I think it was

15   -- negotiations were initiated prior to the retention of

16   my firm.  And then with my firm specifically we

17   negotiated the specific terms, the structure and specific

18   terms of the stipulation over the course of over four

19   weeks.

20        It sets forth and creates a mechanism for the

21   liquidation of the property.  It guarantees the ability

22   to pay for the reasonable costs of that effort.  It

23   creates a mechanism for pursuit and sharing of certain --

24   the proceeds of certain claims that both the lender and

25   allegedly -- I should say, they're alleged claims.

EIGHT-115 ASSOCIATES, LLC - DEBTOR                16

1    They're not -- they're not conceded, certainly -- against

2    Daniel Reifer by both the lender and the trustee.

3        It creates a mechanism for the trustee's

4    management of the property pending sale, and it assures

5    most significantly to the trustee, it assures a

6    distribution to general and secured creditors of

7    $100,000.

8        That guaranteed amount that would be there

9    following the sale is exclusively for unsecured

10   creditors.  It cannot be -- no part of it can be shared

11   by administrative creditors, no part of that can be

12   shared by the lender on account of any deficiency claim,

13   and in addition, if the trustee does not exhaust the

14   professional fee carve out, any remaining amount of that

15   professional fee carve out would join that estate pot

16   that no party would have access to except for unsecured

17   creditors.

18       So if the scheduled creditors were to be

19   correct, which are in the neighborhood of just south of

20   half a million dollars, it would guarantee a distribution

21   of in excess of 20 percent.  Obviously, that is all we

22   have -- claim bar date, we have to wait for that bar

23   date, and you never know exactly what claims are going to

24   be asserted.  Certainly, Mr. Reifer and his entities have

25   asserted over $300,000 in unscheduled claims, so that was

                    EIGHT-115 ASSOCIATES, LLC - DEBTOR            17

1    not accounted for to the extent that they were valid.

2    But it does ensure that there --

3              THE COURT:  That's for Daniel Reifer.

4              MR. STEVENS:  Daniel Reifer.  Correct, Your

5    Honor.

6              THE COURT:  All right.  Go ahead.

7              Does Stanley Reifer have claims also?

8              MR. STEVENS:  Your Honor, Stanley Reifer didn't

9    schedule claims for himself that I'm aware of, but those

10   would be -- unless they were subject to some form of a

11   wage exemption, they would be for Mr. LaMonica to assert,

12   and I haven't had that conversation with Mr. LaMonica

13   yet.

14             THE COURT:  Is -- so Stanley Reifer's case is a

15   Chapter 7 case?

16             MR. STEVENS:  It is, Your Honor, and

17   interestingly Mr. Rosen's firm represents -- represents

18   both Mr. Reifer in his individual case as well as the

19   debtor in this case, so I don't know if Mr. Gyparakis has

20   an answer to that question, but he would probably know

21   better than I whether Mr. Reifer asserts some claim

22   against the debtor's estate.

23             THE COURT:  Go ahead.

24             MR. STEVENS:  So to outline briefly, the terms

25   of the stipulation, the first and I think primary thing

EIGHT-115 ASSOCIATES, LLC - DEBTOR          18

1    that has drawn most of the irony objections in question,

2    is the allowance of a lender's claim.  The trustee has

3    agreed to allow the lenders secured claim, subject of

4    course to the value of the collateral.  They can't be

5    secured against something that doesn't have sufficient

6    value to cover the amount, but the lender's allowed claim

7    would be $11 million plus its interest that accrues

8    subsequent to entering the stipulation.

9         That $11 million is based on -- the lender

10   asserts that its owed in excess of $14.2 million.  The

11   debtor, prior to the filing in the litigation posture and

12   the trustee were he in a vacuum able to assert a bald

13   litigation posture, would assert that the lender's claim

14   would be roughly 8 million.  The reason for that wild

15   swing as set forth in the papers and a number of the

16   objections, is when precisely the lender is entitled to

17   start accruing interest at the default rate of 24

18   percent.

19        The lender asserts that it is permitted to

20   assert that at the earliest possible date on the

21   allegations of wrongdoing by the debtor.  That is the

22   subject of the litigation between the Reifers.

23        The estate at its most aggressive, would assert

24   that there's no entitlement to default interest until the

25   maturity date on the loan, which was roughly a year

EIGHT-115 ASSOCIATES, LLC - DEBTOR          19

1    prior, and that is the wild swing between the 8 and 14.2

2    million.

3              After a significant back and forth, the parties

4    agreed to resolve it at 11 million, which is roughly $1

5    million shy of the 12 million that would be due to lender

6    if the -- if the default rate accrued after what we've

7    dubbed as the alleged violations date, which is a date

8    when the lender -- or, excuse me, the debtor represented

9    by affidavit that it would cure various violations that

10   it failed to cure.

11             THE COURT:  What were those violations?

12             MR. STEVENS:  I'm sorry, Your Honor?

13             THE COURT:  What were those violations?

14             MR. STEVENS:  If you don't mind, Your Honor, I

15   would -- if I could defer to Mr. Newman who has a more

16   intimate knowledge of exactly what the subject of the

17   litigation in those, it probably would get Your Honor a

18   cleaner and faster answer.

19             THE COURT:  That's fine.  Well, why don't you

20   finish up and then we'll -- I'll ask Mr. Newman to

21   address that?

22             MR. STEVENS:  Okay.  Thank you very much, Your

23   Honor.

24             The stipulation provides for the management of

25   the property pending sale.  To date, the trustee has not

EIGHT-115 ASSOCIATES, LLC - DEBTOR                    20

1    asserted or intervened in the management which is

2    continued to be done via the same mechanism that was

3    being done prepetition.  We don't have significant

4    transparency into those funds, which are subject to the

5    lender's liens.  This creates a mechanism for the trustee

6    to take control via a fully licenced and bonded property

7    manager.  We have fully negotiated the terms of an

8    agreement with a property management -- manager, that if

9    the Court approves this stipulation we would file very

10   quickly a motion for approval of that agreement and the

11   trustee's management of the debtor under Section 721.

12            The stipulation provides –

13            THE COURT:  Who is managing the property

14   currently?

15            MR. STEVENS:  I'm sorry, Your Honor?

16            THE COURT:  Who is managing the current -- the

17   property currently?

18            MR. STEVENS:  Stanley Reifer, the debtor's

19   principal, has continued to manage it and has, subject to

20   the initial phase, has been instructed to set aside and

21   not use the proceeds for any purpose other than an

22   emergency purpose.

23            THE COURT:  Is there a budget for management

24   currently?

25            MR. STEVENS:  We do not have a budget at

EIGHT-115 ASSOCIATES, LLC - DEBTOR                21

1    current.  The stipulation provides for the creation and

2    agreement on a budget between the trustee and the lender.

3    That budget -- our problem in negotiating that budget is

4    we needed the retention of a property manager first

5    because our ability to get in and really understand the

6    inner workings of managing a multi-unit property is not

7    what the managers would.

8             So the trustee is -- the order of events that

9    we saw as possible or perhaps ideal, would be to know

10   that we have a deal.  We can then retain the property

11   manager and get advice on that budget which would be a

12   subject of agreement between the lender and the trustee

13   from an operational standpoint, and the initial budget

14   would be part of the 721 motion that would be filed

15   before the Court.

16            THE COURT:  Does Daniel Reifer have any role in

17   the current management?

18            MR. STEVENS:  He does not, Your Honor.

19            THE COURT:  So since Stanley Reifer is in his

20   own Chapter 7 trustee, does he continue to manage, or

21   does Mr. LaMonica have management rights?

22            MR. STEVENS:  Mr. Reifer has continued to

23   manage through his own management company.  So to date

24   Mr. LaMonica has been in, I think, a similar situation to

25   us, which is before analyzing exactly what rights you

EIGHT-115 ASSOCIATES, LLC - DEBTOR            22

1    have, there is -- does it make sense?  Is there going to

2    be of benefit to the estate and its creditors to exercise

3    those rights and to get involved?

4              So, to date, I'm not sure exactly what Mr.

5    LaMonica's rights would be to declare himself as either

6    the general partner or managing member of Mr. Reifer's

7    own management entity, which presumably the equity is

8    held by its Chapter 7 estate and assert that level of

9    control or if there would be of benefit to him doing so.

10   So I think we've been in the un-ideal position of

11   operating in a limbo until we can get hopefully this

12   agreement in place, and then we can start wrestling all

13   these things to the ground as soon as possible.

14             THE COURT:  Assuming that this agreement is

15   approved, how quickly will you be filing a moment -- a

16   motion to retain the manager?

17             MR. STEVENS:  It would be filed this week, Your

18   Honor.  We've -- I understand Miss Aiello has been

19   handling the negotiation of the agreement with the

20   property manager we are on our -- moved on to a second

21   exhausting negotiations first.  We're in final agreement,

22   final form, so it will be filed this week.

23             THE COURT:  All right.  Go ahead, Mr. Stevens.

24             MR. STEVENS: The next facet is an agreement

25   that the trustee would retain -- jointly retain

EIGHT-115 ASSOCIATES, LLC - DEBTOR          23

1    (indiscernible) auction and Cushman & Wakefield to market

2    and sell the property.  That -- those retention

3    agreements has been fully negotiated, agreed to, and have

4    been shopped, and I believe approved by the U.S.

5    Trustee's office subject to filing them when we are in a

6    position to be able to market the property.

7           The commissions of the brokers will be fixed at

8    a 4 percent buyers' premium which will be reduced to 1

9    percent if the lender ultimately purchased at the credit

10   bid.

11          There is a mechanism, as I mentioned earlier,

12   for the creation and approval of budgets, the trustee's

13   payment of nonemergency expenses without lender approval,

14   as well as the remission of -- and protection of rent --

15   rent payments.  Which would be --

16          THE COURT:  Does the settlement, if it's

17   approved, fix the maximum amount of the lender's credit

18   bid at the $11 million?

19          MR. STEVENS:  The mechanism for the creation of

20   lender's credit bid is set forth almost over two pages,

21   and it gets relatively complicated.  Their credit bid can

22   vary in amount depending on -- and they can determine

23   exactly what amount they want to.  They could certainly

24   credit bid up to 11 million, but it does require --

25          THE COURT:  So is that the maximum?  Is the 11

EIGHT-115 ASSOCIATES, LLC - DEBTOR                24

1    million the maximum amount of the credit bid?

2                    MR. STEVENS:  Unless they're entitled to

3    additional amounts for making lender advances under this

4    stipulation if those were necessary.  For example --

5                    THE COURT:  Okay.

6                    MR. STEVENS:  -- if there was a catastrophic

7    emergency and they had to advance funds, that could be

8    added to it.

9                    THE COURT:  But -- but they're giving up any

10   ability to credit bid, essentially, the $3.2 million, the

11   difference between what the 14.2 and the 11 million has

12   been -- that the settlement would provide.

13                   MR. STEVENS:  Absolutely, Your Honor.

14   Absolutely.

15                   THE COURT:  Okay.  All right.  Go ahead.

16                   MR. STEVENS:  There's a creation -- there is

17   some -- some fixing of terms that would ultimately be

18   proposed as the terms of sale for the 363 sale, which of

19   course will require its own independent motion and notice

20   to creditors and the court's approval.  But there is an

21   agreement that the bidding procedures that we would seek

22   approval of would set forth the buyer's premium and that

23   there was an obligation by the buyer to pay real property

24   taxes and transfer taxes and any fines or violations.

25                   Of course, that is not to -- there is no

EIGHT-115 ASSOCIATES, LLC - DEBTOR                25

1    intention of getting out of the debtor's obligation to

2    make sure that they are paid, this merely is shifting of

3    obligation from the seller to buyer on those fronts.

4            The lender's credit bid is fixed in its

5    mechanism for exercising that.  There are some key

6    components to their exercise of a credit bid, including

7    the requirement essentially to make a $5 million cash

8    payment subject to a rapid return of any amount that they

9    are entitled to.  But it's a necessary component in terms

10   of the creation of the estate, and also to ensure that

11   the estate pot and professional fee carve out are

12   recovered by the estate in the event of a credit bid.

13           THE COURT:  Let me ask you –

14           MR. STEVENS:  There is -- yes.

15           THE COURT:  Mr. Stevens, hold on.  And it may

16   be that Ms. Cacuci wants to address this.

17           So I understood that essentially there would be

18   a minimum –- if it's sold by credit bid, there would be a

19   minimum bid of $5 million in cash available.  How much

20   unpaid property taxes and any other obligations to the

21   city -- I don't know whether there's a water -- I don't

22   know what -- what all those obligations are.  What is

23   your understanding of the amount that's owed the city?

24           MS. CACUCI:  Your Honor Gabriela Cacuci for the

25   City of New York.  I didn't know if counsel would like to

EIGHT-115 ASSOCIATES, LLC - DEBTOR                26

1    respond.  I'm willing to defer.

2              THE COURT:  Well, let Mr. Stevens and then I'm

3    going to give you a chance -- clearly give you a chance

4    Ms. Cacuci.

5              Go ahead, Mr. Stevens.

6              MR. STEVENS:  Thank you, Your Honor.  I was

7    actually going to express the exact same willingness.

8              My understanding is that right now as we sit

9    here today there is no property taxes outstanding.  But

10   counsel has a far better understanding of what other

11   issues may exist.  She was kind enough to outline them in

12   an email that she circulated and which was the outline

13   for some of our efforts to resolve the city's issues

14   before.  So I would certainly defer on that.

15             THE COURT:  I will --

16             MS. CACUCI:  Your Honor, it --

17             THE COURT:  Go ahead, Ms. Cacuci.  Go ahead.

18             MS. CACUCI:  -- we have a happy situation in

19   the sense that the real estate taxes are paid and the

20   water and sewer, and -- so I'm not currently aware of

21   anything in liens.

22             However, since we don't know how long the

23   process is going to take in terms of the sale, also the

24   city as, you know as a party defendant in the adversary,

25   what I wanted for the stipulation is just a two-liner

EIGHT-115 ASSOCIATES, LLC - DEBTOR                27

1    that would provide that with respect to post-petition

2    secured taxes and, you know, real estate taxes and water

3    and sewer, and any other liens that they raise, you know,

4    under applicable state law at the same level.  For

5    example, emergency repair liens, which is all statutory,

6    that you know, they are not prime.

7          So I just -- I just asked and suggested in one

8    sentence literally, that we have one separate paragraph

9    that provides that those senior statutory liens are now

10   being primed, because the real estate taxes will come due

11   in January for example.  Water is going to be consumed

12   because the buildings are occupied.  I have no idea who's

13   going to pay what, so assuming there's a possibility of

14   these senior liens attaching post-petition, and those are

15   secured administrative claims.

16         So that's -- but that's for the future.

17   Currently, there's nothing outstanding in terms of senior

18   liens.  We have some subordinate liens but that's a

19   different issue.

20         THE COURT:  I think -- you know, I think if

21   this is approved I think you ought to be able to -- and

22   obviously, I'm not going to prove it until all of these

23   little wrinkles are done, but I feel pretty confident

24   that you and Mr. Stevens and lender's counsel will be

25   able to resolve the issues.  You know, I -- it didn't --

EIGHT-115 ASSOCIATES, LLC - DEBTOR              28

1    when I looked at the papers it didn't seem to me that

2    they were trying to prime any of the city's liens so,

3    but --

4              MS. CACUCI:  Well there is no --

5              THE COURT:  Let me get back to Mr. Stevens.

6              MS. CACUCI:  Sorry.

7              THE COURT:  Let me come back to Mr. Stevens and

8    then Ms. Cacuci, I'll give you a chance to address any

9    further issues and that.

10             MS. CACUCI:  Yeah, sure.

11             THE COURT:  Let me finish up with Mr. Stevens.

12             Go ahead, Mr. Stevens.

13             MR. STEVENS:  Thank you, Your Honor.  There is

14   a -- and I don't have too much more.  There is a sharing

15   agreement in the stipulation which results in -- which if

16   approved, the lender will receive 80 percent.  But to the

17   extent it has a deficiency claim, there's a mechanism for

18   fixing whether the lender has a deficiency claim, that

19   that lender would get 80 percent of the Estate's net

20   recovery from Mr. Daniel Reifer and any of his entities

21   or what were dubbed the Reifer entities, to the extent

22   there is a recovery.

23             And the estate would get 15 percent of the

24   lender's recovery from any of the Reifer entities or Mr.

25   Reifer with respect to his personal guarantee.

EIGHT-115 ASSOCIATES, LLC - DEBTOR              29

1          The sharing agreement was -- had some

2    importance in terms of ensuring that the lender and the

3    estate would not be competing over the same recovery

4    source.  Then there is a standard 506(c) waiver in the

5    stipulation that, if approved, we would not -- the estate

6    would not go and seek additional surcharges outside the

7    four corners of the stipulation against the lender.  And

8    it has essentially a no objection line with it -- from

9    the trustee with respect to the lenders -- it grants the

10   lender relief from the stay to pursue the state Court

11   foreclosure action, which it has removed to this Court,

12   obviously subject to the rights of any parties to object

13   or -- or, you know, move for extension, or what their

14   rights may be.  It is granted relief from the stay in

15   order to, you know, fix claims provided of course that

16   the lender and parties don't seek anything outside the

17   four corners of the stipulation.

18          The two primary parts of the settlement that I

19   outlined before were the -- one was the compromise, the

20   $11 million compromise, and I discussed briefly our basis

21   for agreeing to that and why -- why we ultimately reached

22   the agreement we did.  I will say for this settlement, as

23   for any other settlement to which I or any client I've

24   ever represented has been a party, it's not where we

25   started, it's where we finished.

EIGHT-115 ASSOCIATES, LLC - DEBTOR                    30

1          So you know, without lending credence to some

2     of the things that we have heard and seen from some of

3     the objectors, many -- much of it happens to be things

4     that we argued in the context of reaching the

5     stipulation.  And the stipulation is what we ultimately

6     reached, and what the trustee believes to be in the best

7     interest of creditors.

8          The trustee sees no reasonable assurance that,

9     one, the property will be liquidated in a manner where

10    creditors can be heard and there will be free and fair

11    participation in the supervision of a competent Court

12    with nothing happening, without notice to all creditors.

13    A foreclosure action certainly doesn't invite the same

14    participation and that the same transparency as a

15    bankruptcy case, and certainly, there's nothing in the

16    context of a foreclosure action that would assure that

17    there is going to be recovery for the estate's general

18    unsecured creditors, which is the primary -- primary

19    facet of this stipulation as far as the trustee is

20    concerned.

21          Again, to address complaints about the amount,

22    that's where we ended.  It's now where we started.  But

23    as a whole, the trustee believes, believes strongly that

24    approval of the stipulation is in the best interest of

25    the estate and its creditors and that its approval is

EIGHT-115 ASSOCIATES, LLC - DEBTOR            31

1    going to put creditors -- unsecured creditors in a better

2    position and with better assurances than they would on

3    any other alternative.

4            With that, Your Honor, I did not prepare much

5    else.  Obviously, I have plenty of things that I could

6    state in response if Your Honor has questions, but that

7    is -- that concludes, I think, what I had prepared to

8    present to the Court without --

9            THE COURT:  Let me asked a couple of -- couple

10   of questions.

11           Do you have -- outline for me if you can, and

12   maybe it's the lender's counsel is in a better position

13   to do this, the claims against Daniel Reifer.  How have

14   they been -- has there been an estimate of the value of

15   the claims against Daniel Reifer?

16           I have to say, this is the second or third case

17   on my docket in recent months where a family feud seems

18   to be pretty front and center in the nature of the

19   dispute, and certainly that seems to be the case here

20   with the father accusing the son of having improperly

21   transferred well over $1 million from the debtors.

22   Whether there's any merit to it, I'm not speaking to that

23   at all, but certainly that allegation was made in

24   litigation and I think that Daniel Reifer's claim against

25   his father, I think was $100,000.  Maybe it's for more,

EIGHT-115 ASSOCIATES, LLC - DEBTOR                    32

1    but again, I'm not making any assessments at all about

2    the merits of it, but have -- on behalf -- has the

3    trustee, or you on behalf of the trustee, done any

4    evaluation of what you believe a reasonable range of

5    potential recoveries against Daniel Reifer would be as to

6    which the trustee would share under the proposed

7    agreement before me?

8         MR. STEVENS:  So, Your Honor, with respect to

9    the lender's claims against Mr. Reifer, they will be

10   driven almost entirely on what the allowed deficiency is

11   on the claims.  So if the property is --

12        THE COURT:  Take it he's a guarantor?

13        MR. STEVENS:  Correct, Your Honor.  So that

14   number could be incredibly large, it could be small.

15   Much will depend on the success that we have in the sale.

16   But that would be a contract claim, subject of course to

17   all the defenses, whether they are contractual or

18   equitable, that Mr. Reifer can assert and litigate.

19        But I think from a -- you know from a standard

20   sitting, people usually would value a contract claim to

21   be stronger and easier in terms of -- pursuing to a

22   judgment.  Collectibility of it is a whole other issue,

23   than would a fraudulent transfer action or something that

24   by its nature almost always gets to trial.

25        THE COURT:  Does the trustee have --

EIGHT-115 ASSOCIATES, LLC - DEBTOR            33

1        MR. STEVENS:  Next question.

2        THE COURT:  -- an avoidance claim against

3   Daniel Reifer?

4        MR. STEVENS:  So the trustee's due diligence

5   with respect to avoidance claims against Mr. Reifer is

6   limited to a review of the complaint that was asserted by

7   Stanley Reifer, or you know, through Stanley Reifer on --

8   against Daniel Reifer that allege that Mr. Reifer --

9   Daniel Reifer, excuse me -- had misappropriated in excess

10  of $1 million from the debtors.

11       The timing of that -- now, I cannot represent

12  that we have done a significant amount of due diligence.

13  We've done very little other than review that complaint

14  and flag it as a potential issue, and also that it out

15  here.

16       The one problem I will say, and you know I

17  wanted you convey of course that we have thought about

18  things prior to signing agreements and forcing the Court

19  to spend a significant amount of time, at the same time

20  I'm certainly not waiving anything that we may have in

21  the context of future litigation, but a significant

22  amount of the alleged improper transfers made to Daniel

23  Reifer were made at a time when I think proving --

24  proving the financial condition of the debtor may be more

25  difficult than it would be if it gets closer in time to

                    EIGHT-115 ASSOCIATES, LLC - DEBTOR            34

1    the petition date.  So --

2              THE COURT:  And that would be true of a

3    constructive fraudulent transfer claim where you have to

4    show the debtor was insolvent at the time of the

5    transfers.  Have you also considered whether there was an

6    actual fraudulent transfer claim?

7              MR. STEVENS:   Well -- the issue that we'd have

8    with the actual fraud is having to identify a specific

9    creditor that exists and continues to exist --

10             THE COURT:  Okay.

11             MR. STEVENS:  -- which that part -- that part

12   of that claim, we haven't done the due diligence on.  And

13   also, if -- you know, we have spoken at length to Mr.

14   Daniel Reifer's counsel, who of course vehemently denies

15   any wrongdoing and has couched the suit against his

16   client as essentially retaliatory, because according to

17   their order of events, Daniel Reifer was the first to

18   allege wrongdoing in a formal setting against his father,

19   and that the father's allegations were retaliation for

20   that.

21             So you know, we have spoken to the parties, but

22   that is essentially the extent of the due diligence,

23   except noting that we think those claims will be more

24   challenged -- more challenged than would the contract

25   claims which we'd be competing for.

EIGHT-115 ASSOCIATES, LLC - DEBTOR          35

1          THE COURT:  All right.  Just briefly address

2     the Strasser claim.

3          MR. STEVENS:  Which claim, Your Honor?  I

4     apologize.

5          THE COURT:  Strasser.  The Anna Strasser

6     personal injury claim.

7          MR. STEVENS:  Oh, and I can certainly defer

8     to counsel who is on the line and -- for Ms. Strasser.

9     That is -- relates to -- I'm not sure if it's a slip and

10    fall, or exactly what the nature of the injury was, but

11    that's a claim that we believe should be fully covered by

12    insurance.

13         But in terms of if Your Honor wants the details

14    of the whys, whens, and wheres, you know I could -- I

15    think it probably makes sense to defer to counsel who is

16    on the line.

17         THE COURT:  That's fine.  Okay.  Thank you very

18    much, Mr. Stevens.

19         MR. STEVENS:  Sure.

20         THE COURT:  Well, let me hear from Ms.

21    Strasser's counsel now.  Mr. Tisi.

22         MR. TISI:  Good afternoon.  Good afternoon,

23    Judge.  Judge, my client's claim is a --

24         THE COURT:  Just -- just identify yourself,

25    your name, even though I called you, so we have a clear

EIGHT-115 ASSOCIATES, LLC - DEBTOR                36

1    record.  Every time that you speak, you need --

2              MR. TISI:  My apologies.

3              THE COURT:  -- each time each of you speaks you

4    need to identify yourself first so we have a clear

5    record.  I should have said, at the end of the day, Court

6    Solutions sends to the Court and MP3 audio file of the

7    hearing, and anybody wishing to order a transcript can do

8    so.  But go ahead.

9              MR. TISI:  Thank you, Judge.

10             For the creditor, Anna Strasser, Arthur Tisi of

11   Rosenberg, Minc, Falkoff & Wolff LLP.

12             Your Honor, my client has a trip and fall claim

13   in state Court.  She suffered a fracture in the fall.

14   The short story is this; there are -- I've been advised

15   by defense counsel for Eight-115 Associates, that there

16   is insurance.  The insurance is more than enough to cover

17   my client's claim.  There is no deductible or self-

18   insured retention that the trustee has to worry about.

19             The defense counsel, today, informed me via

20   email that the insurance company is paying all of the

21   defense counsel's bill, and I've been engaged in thorough

22   and detailed discussions with Miss Aiello of Klestadt,

23   even during the holiday weekend, regarding lifting the

24   stay.

25             We both believe that I should be out of this

EIGHT-115 ASSOCIATES, LLC - DEBTOR                37

1   bankruptcy case and allowed to pursue the insurance.  The

2   only issue we're having is this -- trying to word the

3   stipulation so I'm able to pursue discovery.  Of course,

4   being able to pursue the insurance but then not able to

5   pursue discovery to prove my claim is kind of a pyrrhic

6   victory.  So that's where we are on that.

7            The reason why I put in my objection, Judge, is

8   while I'm still in this matter while the stay is still in

9   place preventing me from moving forward, I feel I'm

10  obligated or duty-bound to put in an objection with

11  regard to the estate pot.

12           But with regard to Anna Strasser's state Court

13  claim, there's plenty of insurance.  I'm just -- you

14  know, want to make sure that I could actually get hold of

15  whatever records exist of the -- of the debtor.  I'm not

16  looking to bring the trustee in to testify.  I'm not

17  looking to have the trustee spend any money.  In fact, I

18  don't think that's even going to be an issue.

19           THE COURT:  Okay.  Thank you.  All right.

20           MS. AIELLO:  Your Honor, if I may?  This is

21  Kathleen Aiello from Klestadt Winters --

22           THE COURT:  Yeah, go ahead.

23           MS. AIELLO:  -- on behalf of the trustee.

24           THE COURT:  Uh-huh.

25           MS. AIELLO:  Thank you, Your Honor.  Because

EIGHT-115 ASSOCIATES, LLC - DEBTOR          38

1   I'm the attorney who's been handling this matter with

2   Mr. Tisi, I can confirm that those discussions are

3   largely accurate.  I think that the issue really is

4   related mostly to stay relief, more so than it is the

5   objection pending before Your Honor today.

6          The stay relief motion is scheduled for a

7   hearing next week and I anticipate that based on the --

8   the progress that we've made with respect to the

9   stipulation, that we'd be in a position to resolve that

10  matter before the hearing next week, and as Mr. Tisi

11  said, we are just trying to identify the scope of any

12  future impact on the debtor's estate going forward, but

13  in terms of the principle relief, I think we are largely

14  in agreement.

15         THE COURT:  Is there insurance defense counsel

16  who is defending the personal injury action?

17         MS. AIELLO:  Yes, Your Honor.  That's another

18  issue that I did want to clarify.  Actually, that counsel

19  is retained by the insurance company and is not -- not an

20  attorney who is retained by the Chapter 7 trustee in this

21  case.

22         THE COURT:  No, I understand that.  This issue

23  becomes -- I haven't had it in a while, but usually the

24  issue -- I understand the issue about discovery, but if

25  it's insurance defense counsel whose got to get whatever

EIGHT-115 ASSOCIATES, LLC - DEBTOR                39

1   documents or whatever, or lineup witnesses, the estate is

2   not incurring fees to have that done.

3            So, I -- you know, I'm confident based on the

4   past that, you know other cases, that you're going to be

5   able to get this issue resolved with Mr. Tisi.

6            MS. AIELLO:  Yes, I -- I agree, Your Honor.

7            THE COURT:  And I think trying to deal with it

8   is the motion to lift the stay.  I think you ought to be

9   able to get it buttoned up by then.  Okay?

10           MS. AIELLO:  I agree, Your Honor.  Thank you.

11           THE COURT:  All right.  Let me hear from Mr.

12  Daniel Reifer's counsel.  And there are two.  Who's going

13  to -- who's going to speak?  Mr. McGrail, or -- who is

14  going to speak for Daniel Reifer?

15           MR. McGRAIL:  Good afternoon, Your Honor.  This

16  is Dave McGrail from McGrail and Bensinger, and I'll go

17  first and then cede the floor to my co-counsel.

18           Again, Dave McGrail, McGrail and Bensinger for

19  the record, representing Daniel Reifer.  Your Honor, much

20  ink has been spilled by the parties to the settlement

21  agreement.  You know, we've got two separate replies and

22  very lengthy stipulation, and Mr. Stevens did his best to

23  do -- to provide a brief summary, but it ended up being

24  fairly lengthy.

25           There's a reason for this, and that's that the

EIGHT-115 ASSOCIATES, LLC - DEBTOR          40

1    proposed settlement is very difficult to justify.  It's

2    overreaching.  There are two issues here, and the first

3    issue, which Mr. Stevens identified correctly, and

4    probably the primary issue, is the lender's proposed

5    allowed pre-petition claim, which is tied to the crucial

6    default interest issue.

7          And my co-counsel will address this in more

8    depth, but the big picture from our perspective is that

9    Daniel Reifer has the lender dead to rights on this

10   issue, such that the allowed amount of the claim is

11   somewhere in the neighborhood of, you know, 7 and 8

12   million, not 11 million, and certainly not 14.2 million.

13   And we would suggest that the argument that the estate is

14   handcuffed by a lack of funding and effectively has no

15   choice but to agree to $11 million, is an insufficient

16   basis for settling at that amount.

17         The second issue, which Ms. Strasser's counsel

18   just alluded to is, of course, the so-called $100,000

19   estate pot.  And given that this represents less than 1

20   percent of the lender's proposed pre-petition claim, and

21   only about, you know, 10 percent of what estate

22   professionals stand to gain from the sale of the real

23   estate and bankruptcy, it's hardly surprising that both

24   creditors that filed proofs of claim in this case, have

25   objected to the carve out amount.

EIGHT-115 ASSOCIATES, LLC - DEBTOR                41

1           Now both the trustee and the lender criticized

2    my client in their papers for objecting to the proposed

3    settlement but for failing to provide an alternative.

4    And, Your Honor, just as a creditor -- and I understand

5    this is a difficult situation that the trustee has found

6    himself in, but you know, as a creditor objecting -- just

7    like any creditor objecting to confirmation of plan or a

8    363 sale, you know, we're not really required to provide

9    an alternative.  It's not our burden here.  Again, we get

10   it that the trustees have difficult choices in

11   bankruptcy, but this proposed settlement represents an

12   outrageous giveaway to -- and grab by the lender.

13           We do actually have an alternative, Your Honor.

14   And this ties into, I guess, the latter part of this

15   hearing.  The lender has insisted on removing the

16   foreclosure action to this Court, and there is a pending

17   motion on the default interest issue in that matter with

18   everything fully briefed.  Whether that issue is

19   ultimately heard by Your Honor or by the state Court,

20   it's ripe to be resolved.

21           Moreover, my client doesn't have a fundamental

22   problem with the sale of the property, and the trustee

23   and lender have expressed concern about -- understandable

24   concern about continued accrual of interest, et cetera,

25   if the sale is delayed.  So the sale -- sale can go

EIGHT-115 ASSOCIATES, LLC - DEBTOR              42

1    forward in our view, but our alternative is to have the

2    settlement approved, you know, if Your Honor will do so,

3    with all the bells and whistles, with the appropriate

4    carve out for unsecured creditors, whatever that may be,

5    letting the sale go forward, but holding off on fixing

6    the lender's claim.  You know, it seems likely that that

7    issue --

8              THE COURT:  Who's going to fund -- who's going

9    to fund the management expenses in the meantime, Mr.

10   McGrail?

11             MR. McGRAIL:  Your Honor, I know that there

12   are --

13             THE COURT:  No, answer my question.  Answer my

14   question.  Is your client putting up the money?

15             MR. McGRAIL:  No.  No, he's not.

16             THE COURT:  Is there someone else --

17             MR. McGRAIL:  I don't have --

18             THE COURT:  -- in line?  Is there someone else,

19   or not?  Otherwise, I mean, who is going to pay?  Where

20   is the funds going to come from?

21             MR. McGRAIL:  Your Honor, if it's between, you

22   know, this proposal that's on the table and abandonment

23   of the property, you know, then so be it if the property

24   needs to be abandoned.  I don't have an answer to the

25   question, quite frankly.

EIGHT-115 ASSOCIATES, LLC - DEBTOR                    43

1          THE COURT:  Well, it's easy for you to -- easy

2    for you to say, when your client -- he's not some

3    righteous standby person here.  There are substantial

4    claims against him.

5          MR. McGRAIL:  Well, Your Honor, if I may

6    respond to that?  I meant to address that also, and I

7    appreciate Mr. Stevens' remark about, you know, our

8    position on that, which is correct.

9          We have -- we have filed $13 million of claims

10   in the Stanley Reifer bankruptcy case, and there are a

11   number of litigations that my client on behalf of various

12   partnerships derivatively brought against Mr. Reifer, the

13   Stanley Reifer, you know we really do perceive the -- you

14   know, the claim against my client.  Not the guaranteed

15   claim, but the other claim, as nothing more than a

16   meritless retaliatory claim.

17         You know, I don't think that Mr. Stevens was

18   attempt to -- attempting to suggest that my client has

19   unclean hands, but you know, we're -- he does not.  And,

20   you know, we feel that that issue will resolve itself.

21         But what we would like a fair shake on this

22   pivotal issue of the default interest rate and, you know,

23   by extension, the amount of the lender's claim.  If the

24   lender truly believes that their claim is worth $14.2

25   million, I would think they wouldn't have any problem

EIGHT-115 ASSOCIATES, LLC - DEBTOR          44

1    with this approach.  We would punt on the issue, which

2    they have brought before Your Honor anyway, the sale

3    process can go forward, it's likely this issue will be

4    resolved before a sale occurs, but if it isn't, the money

5    can be escrowed pending a determination.

6             So, Your Honor, that's -- that's where were

7    coming from.

8             THE COURT:  Who is going -- who is going to

9    fund the property in the meantime?

10            MR. McGRAIL:  Your Honor, all I can say to that

11   is, we are aware that money has gone out of the estate,

12   notwithstanding the directions that the trustee has given

13   to Stanley Reifer.  I don't know what the balance in the

14   bank account is right now and I don't have an answer to

15   that.  I mean, we are not -- we are not going to be

16   funding it, to answer Your Honor's question.  So, again,

17   as between these two alternatives --

18            THE COURT:  Has someone else stepped forward --

19   has someone else stepped forward to fund it?

20            MR. McGRAIL:  No, I do not -- I am not aware of

21   that.  I imagine not.  Again --

22            THE COURT:  The weather -- the weather is

23   getting cold.  Who's going to supply heat in the

24   buildings?

25            MR. McGRAIL:  Your Honor, I don't know the

EIGHT-115 ASSOCIATES, LLC - DEBTOR          45

1     exact financial circumstances of the debtor at this

2     point.  All I can say is, the settlement agreement in

3     front of us is, you know, is an outrageous giveaway and

4     my client, you know -- my client does have clean hands

5     here.  I would appreciate, you know, if Your Honor would

6     hear my co-counsel on the issue of default interest,

7     because that's the pivotal issue here, and we think that

8     we have a strong argument --

9              THE COURT:  All right.  Strike that.  I've

10    heard it -- Mr. McGrail, let me hear from your co-

11    counsel.  Usually I only allow one lawyer for each side,

12    but go ahead, I'll hear from him now.

13             MR. PAIOFF:  Hi.  Good afternoon, Your Honor.

14    This is Jared Paioff from Schwartz Sladkus), co-counsel

15    to Daniel Reifer, and I really appreciate you letting me

16    to speak.

17             I just want to answer the question that you

18    posed directly, because since were talking about a

19    difference of about $3 million interest here, if push

20    came to shove I'm sure we could speak to our client and

21    have him fund, you know, payment of a management company,

22    which is most likely only a couple thousand dollars a

23    month to manage these properties, and fund some other

24    expenses if it means that --

25             THE COURT:  Well, you're a little late in that,

EIGHT-115 ASSOCIATES, LLC - DEBTOR                46

1    and you should have -- if you thought that there was some

2    alternative readily available, now is not the time to

3    say, well maybe I'll talk to my client may be he'll be

4    able to come up with some money, and why you think it's

5    only a few thousand dollars a month, I'm quite surprised.

6    Do you have any hard information about what the

7    management costs would be?

8           MR. PAIOFF:  Well, he -- he actually used to

9    manage a property up until 2017, so he has experience

10   doing it.  And my only point is that, just the economics.

11   If he is -- if -- and then we're not -- obviously not

12   conceding this, but if there is potential exposure on his

13   limited guarantee in the event of a deficiency judgment,

14   and the likelihood of there being a deficiency judgment

15   based on an $11 million claim versus an $8 million claim

16   is very high, I'm willing to bet that he would -- he

17   would put up whatever money he needs to in order for this

18   particular issue to be fully fleshed out in Court and a

19   decision on the merits be handed down, as opposed to

20   approval of the settlement as is with $11 million claim,

21   because it would just be completely more cost-effective

22   for him to do that.

23          And if it's a matter of giving us, you know, a

24   few minutes to get him on the phone and seeing if he's

25   willing to do that, I'm sure -- I'm sure we could do

EIGHT-115 ASSOCIATES, LLC - DEBTOR               47

1    that.

2              And I would ask that the Judge at least give --

3    that Your Honor at least give us an opportunity to see if

4    he is willing to, you know, finance operation of the

5    property for the time being.

6              If that -- if that's what it takes for Your

7    Honor to at least defer judgment on --

8              THE COURT:  Let me hear your -- look, you are

9    not a bankruptcy lawyer, am I correct?

10             MR. PAIOFF:  I am not a bankruptcy lawyer.  I'm

11   a real estate litigator -- litigator.  I practice

12   primarily in New York state Court, and that's really the

13   reason why I'm speaking now, because I have -- I have

14   expertise in this particular area and I'm familiar with

15   the, you know applicable case law in the interest issue.

16             THE COURT:  Did you brief it?

17             MR. PAIOFF:  I -- so I represented Daniel

18   Reifer in the foreclosure action --

19             THE COURT:  No, but I -- in opposing -- look, I

20   read the papers.  In opposing this motion, I didn't see

21   an --

22             MR. PAIOFF:  Yes, I briefed it.  I did.

23             THE COURT:  -- an extensive analysis of why you

24   believe the trustee should not be settling on the allowed

25   claim of $11 million, that you have the prevailing side

EIGHT-115 ASSOCIATES, LLC - DEBTOR          48

1    on the default interest issue.

2              MR. PAIOFF:  That's correct, and that -- that

3    those were  -- I put pen to paper there and those are my

4    words in the brief.

5              THE COURT:  Put -- I want to talk to Mr.

6    McGrail again, the bankruptcy counsel.

7              Mr. McGrail, what do you understand the Court's

8    role is in deciding whether to approve a settlement under

9    a 9019?  Is the Court supposed to actually litigate and

10   decide the underlying issue that's being resolved?

11             MR. McGRAIL:  No, Your Honor.  I know the

12   standard, probably verbatim.  I understand the Court is

13   required to only canvass the issues, and I'm well aware

14   of the 9019 standard.

15             THE COURT:  And so, while if it were fully

16   litigated you might be correct about the calculation of

17   default interest, that's not the Court's role in terms of

18   evaluating 9019 settlement; is that correct?

19             MR. McGRAIL:  That's correct.  It does not need

20   to be a full litigation under 9019.

21             THE COURT:  All right.  And why don't I have

22   all of the information I need in front of me to be able

23   to evaluate whether the proposed 9019 settlement by the

24   trustee is fair and reasonable and in the best interests

25   of the estate?

EIGHT-115 ASSOCIATES, LLC - DEBTOR          49

1      MR. McGRAIL:  Well, we would argue our -- Judge

2   Glenn, to the extent that you -- you need to make a

3   decision now, that the arguments we've made and our

4   objection, even under the lower standard, are sufficient

5   to deny the settlement.

6          But again, as my co-counsel stated, we would be

7   more than happy to brief it further if need be, and we

8   think that the timing of the sale process allows for

9   that, and the fact that it already has been --

10         THE COURT:  Well, the time -- the time to

11  object -- the time to fully brief your objection to the

12  9019 motion was before today, to be heard today.  I've

13  read all of the papers.  It's not further briefing.  If

14  you had additional arguments that you wanted to make,

15  they should've been made already.

16         MR. McGRAIL:  Well, we stand by our papers

17  then.  We stand by our objection and the arguments that

18  we made on the default interest issue in the objection.

19  And my -- I'm sure my co-counsel will be happy to answer

20  any questions or provide a summary, you know, of the

21  various arguments.  You know, we didn't want to -- I'm

22  sure he would be happy to do so.

23         THE COURT:  Alright.  Does any other counsel

24  wish to be heard?

25         MR. NEWMAN:  Your Honor, this is Steve Newman.

                    EIGHT-115 ASSOCIATES, LLC - DEBTOR          50

1    Could Your Honor hear me?

2                THE COURT:  Yes, I can.  Go ahead, Mr. Newman.

3                MR. NEWMAN:  Thank you, Your Honor.

4                This is Steve Newman for Katsky Korins, on

5    behalf of the secured lender.  I just want to echo one or

6    two points that Mr. Stevens mentioned, which was, this

7    was a very heavily negotiated settlement.  This was

8    involving a lot of give and take on both sides.  I

9    believe the discussion starting with Mr. Geron started

10   around the second or third week of September, so it was

11   about six weeks of negotiations, and many, many, many

12   drafts of documents and proposed language.

13               We would wish that our claim would be allowed

14   at over 14 million, and by the way, that was calculated

15   as of the end of August and there would be 24 percent

16   interest continuing if we had our way, so our claim today

17   would be maybe a couple million dollars more than the 14

18   million.  But this was a very heavily --

19               THE COURT:  Well, as of the filing -- as of the

20   filing of the case, unless you are over secured, you

21   wouldn't be entitled to any post-petition interest.

22               MR. NEWMAN:  That's correct.  We don't know

23   what the value is.  Your Honor is correct.

24               But that was about the claim in August, and

25   maybe the property is worth more than $14 million.  We

EIGHT-115 ASSOCIATES, LLC - DEBTOR          51

1    don't know.  And as part of the give and take, we agreed,

2    you know, to reduce our claim from X to Y so that if it

3    turns out that the property sells to the $14 million, we

4    don't get $14 million.  We have to live with the lower

5    number that we agreed on, and that was the deal.

6          And we have to come out of pocket for an

7    indefinite period of time to help maintain the property

8    through the point of sale.  Your Honor mentioned heat,

9    there's probably going to be a need for insurance.

10   There's a number of cost items that have to be advanced

11   and we are the only party that's stepped up and has been

12   willing to write a check to pay that.

13         And lastly, and it's been addressed but I just

14   want to make sure the Court is aware, is, the allegations

15   of wrongdoing against Dan Reifer are not coming just from

16   the lender.  It wasn't used as a creative tactic by the

17   lender.  These allegations came right out of Stanley

18   Reifer's handwriting and mouth, both in affidavits and in

19   complaints filed in the state Court, where he's filed

20   these pleadings, not just on behalf of himself but on

21   behalf of the debtor.  So these statements constitute

22   legal admissions that the debtor engaged in this type of

23   wrongdoing by transferring out about $1.1 million in

24   property, systematically over a period of years.

25         We haven't had an opportunity to sit down with

EIGHT-115 ASSOCIATES, LLC - DEBTOR          52

1    Mr. Stevens to discuss the merits of those fraudulent

2    conveyance and other claims against Daniel Reifer.  We've

3    talked about it only in generalities.  We feel they're

4    fairly strong claims.  But this -- this objector is the

5    person who looted the company of over 1.1 $.1 million, so

6    much so that that -- the company was left unable to

7    service the debt, it went into default, and his own

8    father had to sue him to recover this money back.

9         So what's really going on here is, they see

10   that there is exposure and they're trying to minimize

11   their future exposure, not really objecting to the deal.

12        And as far as our entitlement to the claim is,

13   we put appropriate references in our papers to some of

14   the provisions in the loan doc about automatic

15   entitlements and default interest, and we cite to Judge

16   Vyskocil's recent case and 1111 Myrtle Avenue, that like

17   in this case, there's a note, and the note provides that

18   default interest triggers automatically upon a default,

19   and the requirement of notice and a cure doesn't exist.

20   And that's exactly the note that we have in this case.

21   And by the way, that was not fully briefed in the state

22   Court.  I think Mr. Reifer's counsel suggested that it

23   was fully briefed.  It wasn't.

24        What happened in the state Court is, there was

25   a motion to dismiss the action itself, and we addressed

EIGHT-115 ASSOCIATES, LLC - DEBTOR                53

1   the right for us to foreclose.  But there hasn't been a

2   full briefing on it and, you know, that would still need

3   to be litigated out.

4          So we come full circle to, there's -- there's a

5   dispute.  We understand that the borrower and the

6   guarantor wish their position were different, and they

7   wish the case could be determined, you know, the way they

8   want.  We wish it would be determined the way we want and

9   get $14 million.

10         But we reached a deal that we think addresses

11  as many of the needs of as many constituents as possible,

12  and we think it's a fair and reasonable deal, certainly

13  above the lowest point in the range of reasonableness

14  according to Second Circuit standards.  And we have also

15  had a number of phone calls today with New York City to

16  try to resolve their concerns which were enunciated to us

17  today.

18         I think there's two or three items that they're

19  focused on to basically make sure that their liens that

20  -- to the extent they are ahead of us under applicable

21  non-bankruptcy law, remains intact and ahead of us, and

22  we've conceptually agreed to that and we need to work up

23  some language.

24         New York City's counsel sent us some suggested

25  language right before the hearing and we were in the

EIGHT-115 ASSOCIATES, LLC - DEBTOR          54

1     process of working through that when we ran out of time

2     and we got to the hearing.  But I think if we have it a

3     day or so, we could wrap up the issues with New York City

4     very easily.

5                MR. PAIOFF:  Your Honor, this is Jared Paioff

6     again, for Daniel Reifer.  May I please respond to that?

7                THE COURT:  Yeah, go quickly.

8                MR. PAIOFF:  Thanks.  So I just want to make

9     two points clear.

10               One -- and because there was a misstatement by

11    Mr. Newman.  There is -- first of all, there has never

12    been an admission at all in any affidavit by Daniel

13    Reifer.  I think he was conflating Stanley Reifer.  Just

14    so Your Honor is aware, Daniel Reifer's claim against

15    Stanley Reifer was commenced in the fall of 2017.

16         It was litigated, went through discovery, and

17    summary judgment motions were filed.  There was ample

18    evidence supporting his claims against Stanley Reifer.

19    Not until, I think, February of 2020, nearly 2 1/2 years

20    later, Stanley Reifer filed his retaliatory complaint

21    against Daniel Reifer based on conduct that he alleges

22    happened years ago.

23               Nothing has transpired in that action

24    whatsoever.  There's been no evidence.  There's been no

25    testimony, nothing.  All the allegations are baseless.

EIGHT-115 ASSOCIATES, LLC - DEBTOR          55

1    They are based on transfers that Stanley himself

2    authorized, and there is no truth to them at all.

3          In fact, the complaint -- that complaint was

4    never prosecuted whatsoever, including now, including up

5    until the time that the bankruptcy petition was filed.

6    So I would take everything that's said in that complaint

7    with a grain of salt.

8          The other quick point I want to make is, under

9    the express terms of this loan agreement, acceleration

10   after default is optional, and under the controlling case

11   law, where it's optional, the lender has to take -- make

12   -- take affirmative steps to actually declare a default

13   and accelerate the debt before default interest can

14   accrue.

15         That never happened here.  Every month

16   Signature Bank that held the loan up until December 10,

17   2019 when it matured, sent monthly regular statements for

18   principal and interest which was timely paid every single

19   month.  Harlem Multifamily acquired the loan after it

20   matured.

21         It's also black letter law that once a loan

22   matures, a default can't be declared and the debt

23   accelerated.  So it's completely contrary to both

24   controlling case law and the expressed terms of the loan

25   agreement for --

EIGHT-115 ASSOCIATES, LLC - DEBTOR          56

1          THE COURT:  okay.  I've heard enough argument.

2    I've heard enough argument.  All right.

3          Mr. Stevens --

4          MR. STEVENS:  Yes, Your Honor.

5          THE COURT:  -- you need to complete -- I'm

6    going to take the matter under advisement, but you need

7    to complete the negotiations with the city, and also you

8    ought to be able, hopefully to complete very quickly, the

9    issues with -- regarding Ms. Strasser's claim, but more

10   importantly with respect to the city.

11         If you're able to resolve that, you'll have to

12   file an amended agreement that sets forth the terms of

13   that additional agreement as well.  I would be fairly

14   confident that you would be able to get that issue

15   resolved with Ms. Cacuci.

16         With respect to the other issues on the 9019,

17   I'll take that under advisement.  I certainly see issues

18   on both sides as to whether -- as to when default

19   interest began to accrue.  It's not the Court -- the

20   bankruptcy court's role in deciding a 9019 motion, to

21   resolve -- to fully litigate and resolve a disputed

22   issue.  The question is whether the proposed settlement

23   is a reasonable resolution of the issue and whether the

24   proposed settlement falls within the range of

25   reasonableness.

EIGHT-115 ASSOCIATES, LLC - DEBTOR          57

1       So I will wait to see any final papers that you

2   submit.  You need to be sure -- I think there were issues

3   regarding notice, whether proper notice was given of

4   this.  But see if you can get those resolved as soon as

5   you can, file an amended agreement.  I will take the

6   matter under submission and I will decide the remaining

7   issues.

8           Any other questions for today?  On this matter.

9           MR. STEVENS:  No, thank you very much, Your

10  Honor.

11          THE COURT:  We have to deal with the -- the

12  adversary -- initial conference in the adversary

13  proceeding, and that's the *Harlem Multifamily LLC versus*

14  *Eight-115 Associates LLC*, adversary proceeding number 20-

15  01314.  Who's going to be heard on that, first for the

16  plaintiff?

17          MR. NEWMAN:  Your Honor, this is Steve Newman

18  from Katsky Korins on behalf of the plaintiff, the

19  secured lender.

20          THE COURT:  Go ahead, Mr. Newman.

21          MR. NEWMAN:  All right.  So, Your Honor, this

22  is a adversary proceeding that germinated as a state

23  Court foreclosure action against the debtor.  New York

24  City was named because of some violations that are on the

25  title report.  HPD is named as a defendant because there

EIGHT-115 ASSOCIATES, LLC - DEBTOR                    58

1      is an ancient mortgage that was put on the property and

2      years and years ago was transferred to HPD.  That, we

3      believe, was paid off.  I don't think that that's an

4      issue.  We've spoken with various counsels from New York

5      City, and ultimately, I don't believe that the housing

6      violations that was the reason for naming New York City

7      as a defendant are going to be an issue.  New York City

8      in the state Court had actually filed a notice of

9      appearance and waiver with respect to any further right

10     to be heard in the case.  So I don't think there's going

11     to be an issue there.

12            And the other defendant is Daniel Reifer, who

13     is a guarantor of the loan, and as a result of the

14     bankruptcy filing by the debtor, became a full guarantor.

15     The bankruptcy filing was filed as an involuntary Chapter

16     7 in August by the debtor through his father, Stanley

17     Reifer.  Stanley Reifer has been the manager pre-petition

18     as well as post-petition through, I believe, one of his

19     affiliated entities.  He's been collecting the rent.

20            There's going to be a need for a transition

21     from Stanley Reifer to the trustee in terms of collecting

22     the rent, and there was actually a motion pending in the

23     state Court for the appointment of a receiver.  We

24     believe that it was the anticipation of a ruling from the

25     state Court that he was going to -- the state Court judge

EIGHT-115 ASSOCIATES, LLC - DEBTOR         59

1    was about to appoint a receiver that precipitated the

2    actual Chapter 7 filing when it happened.  There was

3    conferences in June and further briefing, and the

4    timeline was such that it was just a matter of an any day

5    event when the state Court was going to appoint a

6    receiver.

7            There's roughly $70,000 of rent that is

8    generated from the six properties that are the subject of

9    the lender's mortgages on a monthly basis.  That $70,000

10   has been collected by Stanley Reifer since December and

11   unaccounted for based on the petition, it looks like

12   hundreds of thousands of dollars were paid out to friends

13   and family of Stanley Reifer right before the bankruptcy

14   filing.  So the estate has a number of avoidance actions

15   related thereto.

16           But candidly, Your Honor, back to the

17   foreclosure action is that, as you heard, is that there

18   may be a deficiency claim and that the estate, as part of

19   the soup of the deal with the negotiation with the

20   secured lender, has negotiated a sharing of any

21   recoveries against Stanley Reifer and -- excuse me,

22   against Daniel Reifer and Daniel Reifer's entities.

23           So that -- there's a -- there's a number of

24   claims.  There is this claim based on the guarantee and

25   the foreclosure.  There is also the, I'll call it,

EIGHT-115 ASSOCIATES, LLC - DEBTOR                    60

1    unfiled avoidance action and other wrongdoing type claims

2    that the trustee has on its -- in its portfolio to review

3    and decide what it's going to do.  And under the

4    settlement that's been proposed with the lender, there's

5    a sharing arrangement of all of those claims between the

6    lender and the estate so that the estate has further

7    upside, and that the estate and the lender are not in

8    competition with one another in chasing Daniel Reifer.

9          And we had filed a notice of removal, which was

10   our right under the federal rules, to remove the action

11   from state Court to this Court because we think that

12   there's going to be significant overlap of issues

13   relating to what we believe will be primarily the assets

14   of Daniel Reifer in discovery, and so we think it's much

15   more cost effective to all parties to have all that

16   discovery related to his assets and what money was moved

17   and when, and where it is amongst his different entities,

18   all in one forum.  And we think it makes a lot of

19   practical sense; it's more efficient.

20         And this will also be a forum that will likely

21   be able to resolve the matter to conclusion much faster

22   so that the trustee will be in position to finalize a

23   distribution to creditors at a much earlier point in

24   time.  And if the matter were not transferred, then the

25   estate would have an inchoate right to a recovery that

EIGHT-115 ASSOCIATES, LLC - DEBTOR          61

1    may not get decided for many, many years, and the states

2    have been -- state courts have been very backlogged

3    because of the whole Covid pandemic.

4            There was a moratorium on motions and the

5    courts were closed for many months.  And the courts are

6    just very backlogged right now, and this -- this, we

7    believe, makes perfect sense to have a forum where all

8    matters could be litigated and the discovery disputes

9    heard in one spot, and be -- things could be produced in

10   one time in front of all the parties and we'll be able to

11   wrap it up, hopefully, in short order.

12           At the moment, the action is on hold.  There

13   was a motion to dismiss that was filed by the debtor that

14   was not ruled on, and that motion to dismiss would

15   basically go away under the settlement, because instead

16   of fighting whether or not we have the right to foreclose

17   the mortgage, the debtor, through the trustee under the

18   stipulation, has agreed to sell the property and

19   distribute the proceeds based upon the proposed

20   settlement agreement.

21           And so, what I believe would be appropriate is

22   that the action would effectively be on hold for probably

23   about three months.  Let the trustee come in, sell the

24   property, and we'll see what the value is.  Maybe there's

25   no deficiency and this action goes away.  If there is a

EIGHT-115 ASSOCIATES, LLC - DEBTOR               62

1    deficiency, we know what it is and both sides have the

2    ability, you know, to do whatever they need to do to

3    protect their interests.

4              So I think that's -- that's the sum and

5    substance of the adversary proceeding, Your Honor.

6              THE COURT:  All right.  And if I understand,

7    then, you propose this be put on hold until the Court

8    makes a decision with respect to the proposed settlement,

9    and if the Court approves it, then marketing of the

10   properties would go forward and we'll see whether there's

11   a deficiency.  Is that a fair summary?

12             MR. NEWMAN:  Yes.

13             THE COURT:  All right.  Let me hear from the

14   defendant -- any of the defendant's counsel that want to

15   be heard.

16             MR. PAIOFF:  Hi, Your Honor, this --

17             MS. CACUCI:  Gabriela Cacuci -- go ahead.  Go

18   ahead.

19             MR. PAIOFF:  Thanks.  Thank you.

20             Hi, Your Honor, this is Jared Paioff again for

21   Daniel Reifer.  I would be representing him in the

22   adversary proceeding.

23             As Your Honor just stated, and as explicated by

24   Mr. Newman, the request has been made to just put this on

25   hold until the property is sold to then see if there is

EIGHT-115 ASSOCIATES, LLC - DEBTOR                    63

1    any type of deficiency judgment at that point.

2            And if that were to occur, that would just

3    leave the lender and my client as the guarantor.  And you

4    know, case law is abundantly clear that the bankruptcy

5    Court is not really a -- is not the proper venue for a

6    garden-variety state law breach of contract claim by non-

7    debtor parties.

8            You know, we saw --

9            THE COURT:  I don't -- I don't read -- I don't

10   read the law the same way you've just described it, but

11   go ahead.

12           MR. PAIOFF:  Okay.  Well, I have a -- I have a

13   case cite for Your Honor if it would help.  It is --

14           THE COURT:  This is a case conference.  I don't

15   have a motion.  I don't want a case -- I don't want cites

16   now.  This is not the time for it.

17           MR. PAIOFF:  No, well, I guess where I'm going

18   with this, Your Honor, is that we're contemplating filing

19   a motion for remand on that basis.  You know, this --

20   this case was filed in state Court, and the issue of my

21   client's liability under the guarantees is a state -- is

22   a state Court issue.  We don't think this is a proper

23   venue.  You know, certainly the ancillary matters

24   relating to the bankruptcy, you know, should be heard by

25   Your Honor.

EIGHT-115 ASSOCIATES, LLC - DEBTOR            64

1          But from what I'm hearing, if plaintiff's

2     counsel is proposing that this be put on hold and nothing

3     be done in this adversary proceeding, unless and until

4     the property is sold and there is a deficiency amount,

5     then I'm just kind of confused why this case would then

6     continue in this venue.

7          And like I said, you know, we were

8     contemplating filing the motion and obviously, Your

9     Honor, has no motion before him at this moment so there's

10    nothing to rule on, but I didn't want there to be any

11    surprises if we do in fact file that motion.

12         THE COURT:  Let me ask, do you -- from your

13    comments earlier, I think you agree that a proposed --

14    that a sale process should go forward with respect to the

15    properties.  Do you agree with that?

16         MR. PAIOFF:  I do, Your Honor.

17         THE COURT:  All right.  What I've -- past

18    experience has shown that greater value can be achieved

19    in an orderly sale in a Chapter -- a Chapter 7 case here,

20    than in a state Court foreclosure.  Your client has a

21    better chance of no deficiency, or a smaller deficiency,

22    if there's an orderly sale process in the bankruptcy

23    Court.  I'm not -- you may agree or disagree with that,

24    but that's been what I've ordinarily seen.  And if

25    there's a robust sale process and there's no deficiency,

                    EIGHT-115 ASSOCIATES, LLC - DEBTOR            65

1    that enures to your client's benefit.  Would you agree

2    with that?

3            MR. PAIOFF:  I agree with all of that, Your

4    Honor.

5            THE COURT:  Okay.  All right.  I'm -- look, I'm

6    not -- you can file your motion.  I'm not preventing you

7    from filing a motion.  I'm -- the only thing I would say

8    is, I will extend the time for any of the defendants to

9    respond to the complaint pending further order of the

10   Court.  So no one -- I'm so ordering the transcript in

11   that, so no one should feel that they have an immediate

12   deadline to file a further response to the complaint now

13   that the case has been removed to this Court.

14           But let me ask, Ms. Cacuci, are you

15   representing the city entities in this -- in this matter?

16           MS. CACUCI:  Yes, Your Honor, but in light of

17   what the Court just indicated, I think I'm -- we had -- I

18   have some notice issues that I expressed to counsel this

19   morning.  I don't think there is a need to go over that.

20   I also feel that if the property is going to be sold,

21   sold in terms of the ECB, the ECB is one of the

22   defendants, that should be taken care of to the extent

23   those liens attach to the proceeds, which is the normal

24   procedure.  And in addition, as the Court indicated, if

25   we have more time that resolves, you know, any other

EIGHT-115 ASSOCIATES, LLC - DEBTOR          66

1    issues.

2              I would like for the record, just for one

3    second, to mention however, that in terms of the main

4    case, Your Honor, you know, we had no notice and I would

5    not have -- be part of this call had not finally a notice

6    -- you know, a notice came to the Department of Finance

7    late Wednesday night.  So we had no notice of this case.

8    We had no notice of the proposed motion, of the

9    stipulation, and so on, until I learned from DOF

10   Wednesday night that there was a pretrial conference.

11             THE COURT:  I --

12             MS. CACUCI:  And that's because the notice --

13             THE COURT:  -- and I -- Ms. Cacuci, I under --

14   I did understand that there was a notice --

15             MS. CACUCI:  Yeah.

16             THE COURT:  -- issue about it.  I'm not ruling

17   today.  I'm hopeful that you'll be able -- in the main

18   case, you'll be able to work out a satisfactory

19   resolution --

20             MS. CACUCI:  Oh, absolutely, Your Honor.

21             THE COURT:  -- and so the notice issue will --

22             MS. CACUCI:  I just -- I just --

23             THE COURT:  -- will go with --

24             MS. CACUCI:  -- felt I had to state that for

25   the record.

EIGHT-115 ASSOCIATES, LLC - DEBTOR                67

1      THE COURT:  I'm fully aware of that.  No, I'm

2  fully aware of that Ms. Cacuci, and I appreciate you

3  raising it.  Okay.

4      MS. CACUCI:  Thank you.

5      THE COURT:  But again, in terms of this

6  adversary proceeding, I'm extending the time of

7  defendants to respond.  I'm not preventing Daniel Reifer

8  from filing a motion if that's what he -- he wants to do.

9  If he wants to hold off, he won't be and -- and I

10  understand there was a state Court motion that was not

11  ruled on, but we'll leave it at that.

12      MS. CACUCI:  Thank you, Your Honor.

13      MR. PAIOFF:  And, Your Honor, this is Jared

14  Paioff.  Just so I'm clear, and I appreciate Your Honor

15  extending the time, just so -- just for the -- to clarify

16  for Your Honor.  We -- we actually answered back in, I

17  think, March, on behalf of Daniel Reifer.  We didn't file

18  the motion to dismiss.  It was only (indiscernible) --

19      THE COURT:  Okay.

20      MR. PAIOFF:  -- so we actually -- an answer.

21      But we would respectfully appreciate Your

22  Honor's extending any time to file a motion to remand,

23  you know, assuming we end up doing that, you know,

24  pending the, I guess the sale of the property.

25      THE COURT:  I do.  I'm -- well, let me -- let

EIGHT-115 ASSOCIATES, LLC - DEBTOR                68

1    me think.  I want to be careful about this because I

2    don't have the rule on a motion to remand squarely in

3    mind.  There are some deadlines I can't extend, so why

4    don't you look at the issue if you want me to -- if I

5    can, I'm more than happy to extend your time.

6            I think, let's get the 9019 motion out of the

7    way one way or the other.  I'm not ruling on it yet.  I

8    want to see what the final agreement looks like.  But I

9    want to be careful about -- I'm certainly -- I can and

10   will extend the time of any defendants to answer.  I'm

11   not clear, and therefor I'm not ruling on whether I can

12   extend your time to move to remand to state Court.  Okay?

13   I'm not trying to put you in a corner, I just want to be

14   careful.

15           If I extend your time and I don't have the

16   authority to do that, it then becomes an issue of the --

17   of whether that -- what I've ruled would be binding on

18   you.  So why don't  you --

19           MR. PAIOFF:  Yep.

20           THE COURT:  -- satisfy yourself as to that

21   issue?  Okay?

22           MR. PAIOFF:  Okay.  Understood, Your Honor.

23   Thank you.

24           THE COURT:  Okay.  All right.  Anybody else

25   have anything they want to raise today?

EIGHT-115 ASSOCIATES, LLC - DEBTOR          69

1          All right.  Mr. Stevens, with respect to the

2    main case, either get final papers in no later than a

3    week from today, or give me a status report about what --

4    if there are still further issues that have to be

5    resolved.  Okay?

6          MR.  STEVENS:  We certainly will, Your Honor.

7    Thank you.

8          THE COURT:  Okay.  We're adjourned.

9          MS. CACUCI:  Thank you.

10         MR. STEVENS:  Thank you, Your Honor.

11      (Whereupon proceeding was adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EIGHT-115 ASSOCIATES, LLC - DEBTOR          70

1                        I N D E X

2                                              <u>PAGE</u>

3    MOTION ON BEHALF OF THE

4    CHAPTER 7 TRUSTEE, YANN GERON

5     - TAKEN UNDER ADVISEMENT...................... 56

6

7    9019 MOTION TO SETTLE

8    THE CLAIMS WITH THE SECURED LENDER

9     - TAKEN UNDER ADVISEMENT..................... 56

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EIGHT-115 ASSOCIATES, LLC - DEBTOR          71

1

2                         CERTIFICATION

3

4        I, Nancy B. Gardelli of Acorn Transcripts, LLC,

5    hereby certify that the foregoing transcript is correct,

6    to the best of my ability, from the official electronic

7    recording of the proceeding in the above-entitled matter.

8

9

10    __/s/_____          Dated:  December 4, 2020

11    Nancy B. Gardelli

12    Acorn Transcripts, LLC

13    3572 Acorn Street

14    North Port, FL 34286

15

16

17

18

19

20

21

22

23

24

25