**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- x

In re:

EIGHT-115 ASSOCIATES, LLC,

Debtor.

-------------------------------------------------------------- x

HARLEM MULTIFAMILY LLC,

Plaintiff,

vs.

EIGHT-115 ASSOCIATES, LLC, *et al.*,

Defendants.

-------------------------------------------------------------- x

**FOR PUBLICATION**

Chapter 7

Case No. 20-11812 (MG)

Adv. Proc. No. 20-01314 (MG)


<u>**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR REMAND BASED ON**</u>
<u>**MANDATORY ABSTENTION**</u>

*A P P E A R A N C E S :*

KATSKY KORINS LLP
*Attorneys for Plaintiff Harlem Multifamily LLC*
605 Third Avenue
New York, NY 10158
By:    Steven H. Newman, Esq.
       Robert Alan Abrams, Esq.


SCHWARTZ SLADKUS REICH GREENBERG ATLAS LLP
*Attorneys for Defendant Daniel Reifer*
444 Madison Avenue
New York, NY 10022
By:    Stephen Howard Orel, Esq.
       Jared Paioff, Esq.

KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP
*Attorney for Yann Geron, Chapter 7 Trustee*
200 West 41st Street, 17th Floor
New York, NY 10036
By:    Kathleen M. Aiello, Esq.


**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**


      This adversary proceeding arises from multiple alleged events of default under certain

loans issued to Defendant Eight-115 Associates, LLC (the "Debtor").  Plaintiff Harlem

Multifamily LLC (the "Lender") commenced a foreclosure proceeding against the Debtor and

Defendant Daniel Reifer ("Reifer" or the "Guarantor"), as guarantor of the Debtor's obligations

under the Loan Documents (defined below), by filing a summons and complaint in the New

York Supreme Court, County of New York.  After the bankruptcy case was filed, the Lender

removed the foreclosure proceeding to the United States District Court for the Southern District

of New York (the "District Court"), and upon removal, the District Court referred the proceeding

to this Court pursuant to 28 U.S.C. § 157(a).  Pursuant to a settlement between the Chapter 7

Trustee and the Lender (described below), the Debtor's real property is being marketed and will

be sold in a section 363 sale rather than through foreclosure.  The Lender's guaranty claim

against Reifer to recover any deficiency after the property is sold, as to which only the Lender

and Reifer are parties, remains to be adjudicated.  The settlement also provides that the estate

will share in any recovery on the Lender's claims against Reifer.  The issue addressed in this

Opinion is whether that litigation between the Lender and Reifer should take place in state court

or in the bankruptcy court.

      Reifer has moved for abstention and remand of the Lender's claim against Reifer as

guarantor (the "Guaranty Claim") to the New York Supreme Court pursuant to 28 U.S.C. §§

2

1452(b), 1334(c)(2) and 1334(c)(1) and Federal Rule of Bankruptcy Procedure 9027(d).

("Motion," ECF Doc. # 8-1.)[1]  The Lender filed its opposition to the Motion.  ("Opposition,"

ECF Doc. # 11.)  Reifer filed his reply to the Opposition.  ("Reply," ECF Doc. # 15.)  On March

2, 2021, this Court held a hearing on the Motion (the "Hearing") and took the matter under

submission.  For the reasons that follow, the Court **GRANTS** the Motion only as to the Guaranty

Claim and **DENIES** the Motion as to the rest of the adversary proceeding.

## I.    BACKGROUND

The background discussion is derived from the amended complaint, dated March 12,

2020, initially filed in the New York Supreme Court (the "Complaint," Motion, Ex. 1) and

documents filed in this Court as part of the bankruptcy case.

### A. The Debtor's Real Property

The Debtor is the fee owner of the following parcels of real property:

> (i) 264 West 115th Street, New York, New York 10026 (Section 7, Block 1830, Lot 53) (10 Units);
> (ii) 276 West 115th Street, New York, New York 10026 (Section 7, Block 1830, Lot 59) (8 Units);
> (iii) 278 West 115th Street, New York, New York 10026 (Section 7, Block 1830, Lot 60) (10 units)
> (iv) 2120 Frederick Douglass Boulevard, a/k/a 2120B Fredrick Douglass Boulevard, a/k/a 2120 8th Avenue, a/k/a 2120B 8th Avenue, New York, New York 10026 (Section 7, Block 1830, Lot 64) (9 Units);
> (v) 2122 Frederick Douglass Boulevard, a/k/a 2122 8th Avenue, New York, New York 10026 (Section 7, Block 1830, Lot 163) (9 Units); and
> (vi) 2124 Frederick Douglass Boulevard, a/k/a 2124 8th Avenue, New York, New York 10026 (Section 7, Block 1830, Lot 63) (9 Units); (collectively, the "**Real Property**")

---

[1]    "ECF" refers to the docket in this adversary proceeding, and "ECF Main Case" refers to the docket in the bankruptcy case, Case No. 20-11812 (MG).

("Stipulation," Opposition, Ex. 1 ¶ II.A.)  The real property is currently occupied by tenants

under individual leases.  (*Id.* ¶ II.B.)

### B.  The Loan Documents

In the Complaint, the "Loan Documents" are defined as consisting of the notes,

mortgages, guaranties, loan violations affidavits and all other documents executed in connection

with Signature Bank's first loan of $5,775,000 and second loan of $1,150,000 to the Debtor

(collectively, the "Loans").  (Complaint ¶¶ 22, 31, 87, 89, 98.)  Signature Bank assigned the

Loan Documents to the Lender in December 2019.  (*Id.* ¶¶ 32, 99.)  Based upon certain alleged

defaults, the Lender sought to foreclose on the property subject to the mortgages and collect full

payment under the Loan Documents.  (*Id.* ¶ 1.)  Section 2.1.2 of the first and second mortgages,

entitled "Events of Default-Automatic Acceleration," provides "[t]he Debt shall forthwith and

automatically become due" upon the occurrence of an "Event of Default."  (*Id.* ¶¶ 37, 104.)

Section 2.2 of the first and second mortgages provides that "[u]pon the occurrence of any Event

of Default, the Mortgagee may . . . declare the entire unpaid Debt to be immediately due and

payable[.]"  (*Id.* ¶¶ 38, 106.)

The third cause of action in the Complaint asserts the Guaranty Claim based on Reifer's

Limited Guaranty dated November 25, 2014 (the "First Loan Guaranty," Opposition, Ex. 6) and

Reifer's Limited Guaranty dated November 4, 2016 (the "Second Loan Guaranty," Opposition,

Ex. 7, and together with the First Loan Guaranty, the "Limited Guaranties").  The Guaranty

Claim seeks payment from Reifer to the extent that the Sale Proceeds of the Real Property are

not sufficient to indefeasibly pay Lender's claim under the Loan Documents in full.  (Complaint

¶¶ 18, 137–139.)

4

Section 1.1 of each of the Limited Guaranties provides: "Guarantor hereby irrevocably and unconditionally guarantees to Lender and its successors and assigns the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise.  Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor."  (Limited Guaranties § 1.1.)  Section 1.2 of each of the Limited Guaranties defines "Guaranteed Obligations" to mean, among other things, "all obligations or liabilities of Borrower to Lender under the Note, Mortgage and all other Loan Documents in the event the Mortgaged Property (as defined in the Mortgage), or any part thereof becomes part of a bankruptcy debtor's estate pursuant to any chapter of the U.S. Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, as it may be amended due to the Borrower's filing for bankruptcy[.]"  (Limited Guaranties § 1.2.)

Section 1.11 of the Limited Guaranties, titled "Waiver of Defenses," provides: "Guarantor hereby waives all defenses (other than payment) in the enforcement of this Guaranty, including the defense of the election of remedies."  (Limited Guaranties § 1.11.)

## C.  The Bankruptcy

On August 6, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  (ECF Main Case # 1.)  On August 7, 2020, Yann Geron (the "Trustee") was appointed interim trustee of the Debtor's estate and thereafter qualified and is serving as permanent trustee.  (Opposition ¶ 16.)

On November 3, 2020, the Lender timely filed, among other things, a notice of removal in the District Court ("Notice of Removal," ECF Doc. # 1-2 to 1-4),[2] and upon removal, the District Court referred the foreclosure proceeding to this Court pursuant to the Standing Order of Reference dated January 31, 2012 (ECF Doc. # 1-6).

On November 4, 2020, the Trustee filed a motion seeking approval of a stipulation between the Trustee and the Lender pursuant to sections 105, 361, 362, 363, 364, 502, 506 and 507 of the Bankruptcy Code, and Bankruptcy Rules 4001(a)(1) and (d), and 9019: (i) fixing the Lender's claim amount as well as the extent, validity and priority of its liens; (ii) establishing a mechanism for the disposition of estate property and the Lender's collateral; (iii) providing for a carve-out of the Lender's liens; (iv) establishing a sharing arrangement with respect to proceeds of certain claims against third parties; and (v) providing for related relief. ("9019 Motion," ECF Main Case Doc. # 25 ¶ 44.) Reifer filed an objection to the Motion. ("Reifer's Objection," ECF Main Case Doc. # 31.) The Trustee filed a reply to Reifer's Objection. ("Trustee's Reply," ECF Main Case Doc. # 38.) The Lender also filed a statement responding to Reifer's Objection. ("Lender's Statement," ECF Main Case Doc. # 39.) The Complaint originally contained claims against the City of New York (the "City"), including its Environmental Control Board. The City also asserted an objection at the November 30, 2020 hearing (the "November 30 Hearing"), but those claims were resolved in a revised draft stipulation submitted to the Court on December 1, 2020, the day after the November 30 Hearing. (*See id.* ¶ 22(a), (b).) On January 20, 2021, the Court "So-Ordered" the Stipulation, which provides in relevant part:

---

[2]     The Lender contends that the Notice of Removal sets forth the sale of the Real Property and the fixing of the Deficiency Claims as "inextricably intertwined" and "core matters" under 28 U.S.C 157(b)(2)(A), (B), (K), (M), (N), and (O). (Opposition ¶ 34.) The Court need not decide the merits of this argument because Reifer only seeks to remand the Guaranty Claim to state court.

3. **Allowance of The Lender's Claims and Liens**.

. . . .

(b) The Lender's claim under the Loan Documents is hereby permanently settled, fixed, liquidated and allowed in the sum of $11,000,000.00, as of August 31, 2020, plus all interest at the Default Rate accruing on and after September 1, 2020, plus any and all additional amounts (collectively, the "**Claim Additions**") for fees, costs, expenses (including, without limitation, attorneys' fees and expenses), protective advances (including any "**Lender Advances**", as defined below) incurred or accruing on or after September 1, 2020, or chargeable after September 1, 2020 with respect thereto (such aggregate amount is hereinafter referred to as the "**Allowed Claim**") . . . .

(c) The Allowed Claim hereby forever constitutes an allowed, legal, valid, binding, enforceable and non-avoidable claim and obligation of the Debtor and the Debtor's estate, and is not subject to any offset, setoff, defense, counterclaim, recoupment, deduction, avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or any other applicable law. Neither the Debtor, the Debtor's estate nor the Trustee possesses or will assert any claim, counterclaim, setoff or defense of any kind, nature, or description which would in any way affect the validity, amount, enforceability, and non-avoidability of any part of the Allowed Claim. Nothing in this Stipulation shall in any way whatsoever limit or reduce any obligations of the Guarantor concerning or with respect to the Loan Documents or the Lender's Allowed Claim, including without limitation, for any interest accruing under the Loan Documents after the Petition Date. The Lender expressly reserves any and all rights to pursue any claims against any third parties, including without limitation any guarantor of the Loans. Any compromise in the amount of the Lender's claim pursuant to this Stipulation is not intended to, and shall not, inure to the benefit of any guarantor of the Loans.

(d) . . . . The Trustee, the Debtor, and the Estate will not assert any claim, counterclaim, setoff, or defense of any kind, nature or description which would in any way affect the validity, amount, enforceability and non-avoidability of any part of the Allowed Claim or any of the Lender's claims, liens, mortgages, or security interests in any of the Pre-Petition Collateral. . . . .

16. **Payment of The Lender's Allowed Claim and Lender's Deficiency Claim**. (a) . . . .

(b) In the event that the Sale Proceeds from all Sales of Real Property are not sufficient to pay the Lender's Allowed Claim in

full, then the Lender shall automatically have a deficiency claim (the "**Deficiency Claim**") under the Loan Documents in the amount equal to the sum of:

> (i) the amount of the Lender's Allowed Claim on the date of the Lender's receipt of the Lender Payment; **PLUS**
> (ii) any Claim Additions; **PLUS**
> (iii) any amount of Sale Proceeds required to be paid to NYC under Paragraph 22 below; **PLUS**
> (iv) the amount of the Lender Bid Cash Component, if the Lender (or its assignee or designee) is the purchaser of the Real Property and such amount was paid to the Trustee; **LESS**
> (v) the amount of the Lender Payment; **LESS** (but, if and only if the Lender or its assignee or designee is the purchaser of the Real Property and made a Lender Credit Bid)
> (vi)(A) if the Lender Bid Cash Component was paid to the Trustee, the amount of the Resulting Credit Bid, or (B) if no Lender Bid Cash Component was paid to the Trustee, the amount of the actual Lender Credit Bid.

The Deficiency Claim shall be an allowed claim.

. . . .

18. **Sharing of Proceeds of Claims Against Daniel Reifer.** (a) Stanley Reifer has identified a number of potential avoidance and other claims against Daniel Reifer. To the extent that the Trustee pursues those claims, or any other claims owned by the Debtor or the Estate against Daniel Reifer, the DRR Trust, RMC Equities and/or any other affiliate, relative, successor, transferee or assignee of any of the foregoing (all of the foregoing being collectively the "**Daniel Reifer Related Persons**") then the Lender shall be entitled to eighty (80%) percent of the net proceeds of the recovery on those claims after payment of all reasonable and allowed professional fees and expenses of the Trustee and Trustee commissions, in each case directly associated with the recovery on those claims against the Daniel Reifer Related Persons, up to the amount of the Deficiency Claim. The Trustee shall seek authority to make such payment to the Lender promptly after the Trustee's receipt of any recovery from any of the Daniel Reifer Related Persons. The Trustee shall be free to abandon or settle any of the estate's claims against the Daniel Reifer Related Persons without the consent of the Lender. (b) To the extent that the Lender pursues its Deficiency Claim against Daniel Reifer or any of the other Daniel Reifer Related Persons, then the Trustee shall be entitled to fifteen (15%) percent of the net proceeds of the recovery on those claims after payment of all fees and

expenses, including, without limitation, all attorneys' fees and expenses, of the Lender associated with the prosecution and/or recovery on such claims against Daniel Reifer or the other Daniel Reifer Related Persons. The Lender shall make such payment to the Trustee after such recovery has become indefeasible. The Lender shall be free to abandon or settle the Deficiency Claim without the consent of the Trustee.

. . . .

23. **Binding Terms.** The terms of this Stipulation shall be binding upon all parties in interest. The Lender's Allowed Claim shall constitute: (i) an allowed claim, not subject to subordination and otherwise unavoidable, for all purposes in this case, other than as specifically set forth herein, (ii) the prepetition liens of the Lender on or related to the Lender Collateral, which shall be deemed legal, valid, binding, perfected, not subject to defense, claim, counterclaim, re characterization, offset of any kind, subordination, and otherwise unavoidable, and (iii) associated prepetition liens, which shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtor's Estate against the Lender all of which have been forever waived and released.

(Stipulation §§ 3, 16–18, 23.)

The Stipulation provides that the Lender will automatically receive a Deficiency Claim under the Loan Documents if the Sale Proceeds from all Sales of Real Property are not sufficient to pay the Lender's Allowed Claim in full. The term "Deficiency Claim" is not defined in any of the Loan Documents. The Stipulation was signed only by the Trustee and the Lender. (*Id.* at 28–29.) Due to the resolution of the Lender's claims against the Debtor and the City pursuant to the Stipulation, the only claim that remains unresolved in the Complaint is the Guaranty Claim against Reifer.

### D. Overruling Order

On January 27, 2021, the Court entered the Order Overruling Reifer's Objection to the Stipulation ("Overruling Order," Opposition, Ex. 2) stating, in relevant part:

> and the Court having jurisdiction to consider the Lender Stipulation Motion, the Revised Stipulation and the relief requested therein accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Lender Stipulation Motion, the Revised Lender Stipulation and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409 . . . .

(*Id.* at 2.)

### E. Parties' Contentions

In the Motion, Reifer argues (I) the Court must abstain from this case and/or from the Lender's claim against Reifer pursuant to 28 U.S.C. § 1334(c)(2); and (II) in the alternative, this Court should abstain under 28 U.S.C. § 1334(c)(1) in the interest of justice.

In support of its first argument, Reifer contends (A) the adversary proceeding was commenced in state court; (B) the adversary proceeding is governed by state law; (C) section 1334 provides the sole basis for federal jurisdiction; (D) the claims in the adversary proceeding are non-core; (E) the adversary proceeding can be timely adjudicated in state court upon remand; and (F) this motion has been made timely.

In the Opposition, the Lender argues (I) this Court has already determined that the matters set forth in the Stipulation are core proceedings and binding on all parties-in-interest; (II) Reifer waived any right he may have had to contest this Court's ability to enter final orders; (III) the purpose of Reifer's Motion is to interfere with the orderly liquidation of the estate, including the sale of the real property and a determination of the deficiency claim, as contemplated by the

10

Stipulation; (IV) the foreclosure proceeding and the claims asserted therein are interrelated core

matters; and (V) Reifer fails to satisfy the elements for either mandatory or discretionary

abstention.

In the Reply, Reifer argues (I) the Motion does not collaterally attack any aspect of the

Stipulation; (II) Reifer did not waive the right to make the Motion; (III) abstention and remand

will not interfere with the sale process; (IV) the adversary proceeding as a whole and the

Guaranty Claim against Reifer in particular are not core proceedings; (V) in the alternative,

Reifer did not waive the right to bring the Motion; (VI) mandatory abstention applies; and (VII)

in the alternative, this Court should abstain in the interest of justice.  Reifer also clarifies that he

is simply seeking to remand the Guaranty Claim against Reifer rather than the entire proceeding

against the Debtor, as suggested by the Lender.  Thus, the following discussion focuses on the

Lender's Guaranty Claim against Reifer.

## II.    <u>DISCUSSION</u>

Section 1334(c)(2) governs mandatory abstention, and the principles of mandatory

abstention apply to a removed action.  *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 446–

47 (2d Cir. 2005).  The Court must abstain if (1) the motion to abstain was timely; (2) the action

is based on a state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case

or "arising under" the Bankruptcy Code; (4) section 1334 provides the sole basis for federal

jurisdiction; (5) an action is commenced in state court; and (6) that action can be "timely

adjudicated" in state court.  *N.Y. City Emps.' Ret. Sys. v. Ebbers (In re WorldCom, Inc. Secs.

Litig.)*, 293 B.R. 308, 331 (S.D.N.Y. 2003), *aff'd sub nom. Cal. Pub. Emps.' Ret. Sys. v.

WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004), *cert. denied*, 543 U.S. 1080 (2005); *Renaissance

*Cosmetics, Inc. v. Dev. Specialists Inc.*, 277 B.R. 5, 12 (S.D.N.Y. 2002); *In re Dreier*, 438 B.R. 449, 457 (Bankr. S.D.N.Y. 2010).

When a party moves for abstention pursuant to 28 U.S.C. § 1334(c)(2), the party arguing in favor of the Court's retention of jurisdiction bears the burden of showing that mandatory abstention is not warranted. *Core Litig. Tr. v. Apollo Global Mgmt., LLC (In re AOG Ent., Inc.)*, 569 B.R. 563, 573 (Bankr. S.D.N.Y 2017); *Fried v. Lehman Bros. Real Estate Assocs.*, 496 B.R. 706, 711 (S.D.N.Y. 2013); *N.Y. Com. Bank v. Pullo*, 2013 WL 494050, at *4 (Bankr. S.D.N.Y. Feb. 7, 2013). There is no dispute that the Guaranty Claim is based on a state law claim, that the action was commenced in state court, and that section 1334 supplies the sole basis for federal jurisdiction. The issues in dispute are whether the Motion was timely made, whether the Court's jurisdiction is core or non-core, and whether the action can be timely adjudicated in the New York Supreme Court.

## A. Timeliness of the Motion

The Lender contends that Reifer failed to timely file a motion to remand the foreclosure proceeding within 30 days after the filing of the Notice of Removal as required by 28 U.S.C. § 1447(c). The Code does not define what makes a motion "timely" within the meaning of 28 U.S.C. § 1334(c)(2). Contrary to the Lender's argument, in *In re Adelphia Communications Corp. Securities & Derivative Litigation*, the court held that a motion for mandatory abstention could be brought more than 30 days after a case was removed to federal court notwithstanding 28 U.S.C. § 1447(c), because that provision only controlled the time limit for defects in removal procedure. 2005 WL 1404796 (S.D.N.Y. June 14, 2005).

The legislative history indicates that to be "timely," a motion to abstain must be filed with the initial pleading of a party. *Personette v. Kennedy* (*In re Midgard Corp.*), 204 B.R. 764, 776 n.14 (B.A.P. 10th Cir. 1997) (citing 130 Cong. Rec. S 6,084 (daily ed. May 21, 1984)). Still, it has been held that the timeliness of an abstention motion must be determined under a case-by-case approach. *In re Dreier*, 438 B.R. at 457. The following factors are considered in determining whether the motion was timely:

> (1) whether the movant "moves as soon as possible after he or she should have learned the grounds for such a motion," (2) whether the moving party has already invoked the substantive process of the federal court on a matter going to the merits of the complaint, and in particular, moved for abstention only after receiving an unfavorable outcome, and (3) "whether the granting of the motion would prejudice or delay the rights of others."

*Joremi Enters., Inc. v. Hershkowitz* (*In re New 118th LLC*), 396 B.R. 885, 893 (Bankr. S.D.N.Y. 2008) ("*New 118th*") (internal citations omitted); *In re Dreier*, 438 B.R. at 457.

As to the first factor, the Lender argues that instead of promptly moving for remand after he learned of the Notice of Removal, Reifer purposefully waited more than two months after the conclusion of the November 30 Hearing to first file his Remand Motion on February 2, 2021, and he did so only after this Court considered and approved the Stipulation and after this Court issued its Overruling Order denying Reifer's Objection to the Trustee's 9019 Motion "in its entirety." (Opposition, Ex. 2.) As to the second factor, the Lender argues that Reifer interposed substantive objections to the Court's approval of the Stipulation that went to the merits of the Complaint. As to the third factor, the Lender argues that the untimely removal of the adversary proceeding, in whole or in part, would prejudice the rights of the Trustee and the Lender and undermine the integrity of the Stipulation.

13

The facts of this case closely resemble the facts in *New 118th*, 396 B.R. 885. There, the court found that the motion to remand based on mandatory abstention was made in a timely fashion, despite more than an eight-month interval between removal of the lawsuit and the defendant's motion. *Id.* at 893–894; *see also Robinson v. Mich. Consol. Gas Co.*, 918 F.2d 579, 584 (6th Cir. 1990) (finding the motion was timely more than eight months after removal); *Gonzales Constr. Co. v. Fulfer (In re Fulfer)*, 159 B.R. 921, 923 (Bankr. D. Idaho 1993) (finding the motion was timely more than four months after removal). The court rejected the defendant's argument that timeliness should be judged from the filing of the amended complaint, which dropped all claims other than those subject to abstention. The court found that the amended complaint did not change the fact that the defendant knew about the grounds for mandatory abstention at the time of removal. The court concluded that this factor weighed against the defendant. Similarly, here, Reifer should have known about the grounds for mandatory abstention at the time of removal. The result of the Stipulation effectively dropping other claims not subject to abstention did not change the time at which Reifer should have known of the grounds for mandatory abstention. Accordingly, the Court finds that the first factor weighs against Reifer.

Although the first factor in *New 118th* weighed against timeliness, the court decided that the motion was still timely based on the other two factors. 396 B.R. at 894. Specifically, the court relied on the fact that the defendant did not move earlier because the parties were discussing a settlement that would have made the motion to remand unnecessary. The defendant had filed the motion within one week of the defendant learning that no settlement would materialize. The court found that the defendant had never invoked the substantive process of the bankruptcy court and the other party would not be prejudiced.

14

Here, Reifer did not file any pleadings in the adversary proceeding before the Motion was filed. While Reifer's Objection in the main proceeding may have touched upon the merits of the Complaint, it does not constitute an invocation of substantive process in the adversary proceeding. It is undisputed that the Lender, the Debtor and Reifer were engaged in negotiations to resolve the Deficiency Claim and put the issue of whether Reifer would owe an obligation as the Guarantor on hold.[3] Reifer's Objection also explicitly reserved the right to file the Motion. The Motion was filed less than three months after removal and within two weeks from the date the Stipulation was "So-Ordered," which resolved the foreclosure claim and claims involving the City in the adversary proceeding. No further proceedings have occurred in the adversary proceeding following the Court's entry of the Stipulation.

Abstention from deciding the Guaranty Claim would not prejudice or delay the rights of other parties. Declining to abstain in these circumstances would discourage parties from engaging in the settlement process to resolve disputes in an efficient manner. *See Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1455 (E.D. Pa. 1995) ("In traditional, two-party litigation there is a general policy in favor of encouraging settlements because such a resolution conserves judicial resources and minimizes litigation expenses."); *Airline Stewards and Stewardesses Ass'n, Loc. 550 v. Trans World Airlines, Inc.*, 630 F.2d 1164, 1166 (7th Cir. 1980), *aff'd sub nom. Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982) ("Federal courts look with great favor upon the voluntary resolution of litigation through settlement."). Additionally, by waiting

---

[3]     At the November 30 Hearing, the Lender's counsel opined that he believed it "would be appropriate" for the Adversary Proceeding to "effectively be on hold for probably about three months. Let the trustee come in, sell the property, and we'll see what the value of is [sic]. Maybe there's no deficiency and this action goes away." (Transcript of Nov. 30th Hearing, ECF Doc. #11-5 at 61.) In response to Mr. Paioff's (Reifer's attorney) statements that he would file a motion to remand, the Court stated that it would not prevent Reifer from filing such motion, that it would "extend the time for any defendants to respond to the Complaint pending further order of the Court," and that "no one should feel they have an immediate deadline to file a further response to the complaint now that the case has been removed to this Court." (Opposition, Ex. 5 at 65:5–13; 67:5–11.)

to file the abstention Motion until the Stipulation was entered, the abstention analysis was clarified to address the simplified adversary proceeding.  Accordingly, the second and third factors support finding that the Motion was timely filed.  Under these circumstances, the Court **FINDS** the Motion was timely filed.

### B.  Jurisdiction

The next issue is whether this Court's jurisdiction over the Guaranty Claim is core or non-core.  Bankruptcy cases and civil proceedings "arising in" and "arising under" title 11 are "core" proceedings, while civil proceedings "related to" cases under title 11 are denominated "non-core."  *In re Millennium Lab Holdings II, LLC*, 543 B.R. 703, 709 (Bankr. D. Del. 2016).  A claim arises under title 11 when it involves "'substantive rights created by federal bankruptcy law'" and arises in title 11 when it "'would have no existence outside of the bankruptcy.'"  *Scott v. AIG Prop. Cas. Co.*, 2017 WL 1380607, at *3 (S.D.N.Y. Apr. 17, 2017) (quoting *Kirschenbaum v. U.S. Dep't of Labor (In re Robert Plan Corp.)*, 777 F.3d 594, 596–97 (2d Cir. 2015) ("*Robert Plan*").  In other words, claims that are core "rest on provisions of the Bankruptcy Code or require construction of the Bankruptcy Code for their determination."  *Ames Dep't Stores, Inc. v. Lumbermens Mut. Cas. Co. (In re Ames Dep't Stores, Inc.)*, 542 B.R. 121, 135 (Bankr. S.D.N.Y. 2015).  Conversely, a claim is only related to cases under title 11 if it "does not depend on bankruptcy laws for its existence and . . . could proceed in a court that lacks federal bankruptcy jurisdiction."  *Dewitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587, 591 (S.D.N.Y. 2012)).  "Claims for pre-petition contract damages are generally non-core."  *Scott*, 2017 WL 1380607, at *3 (citing *In re Orion Pictures Corp.*, 4 F.3d 1095, 1102 (2d

Cir. 1993) ("It is clear that to the extent that the claim is for pre-petition contract damages, it is non-core.")).

The Lender alleges that pursuant to the express provisions in the Limited Guaranties, Reifer's personal guaranty of the Debtor's obligations and liabilities under the Loan Documents was triggered automatically as a result of, among other things, the Debtor's bankruptcy filing. According to the Lender, because the Lender's claims under all of the Loan Documents have been finally determined by a final order of this Court and liquidated in the amount of the Allowed Claim as specified in the Stipulation, Reifer is now personally liable to the Lender for any deficiency to the extent that the Sale Proceeds of the Real Property are insufficient to pay Lender's Allowed Claim in full. (*See* Stipulation § 16.)

Contrary to the Lender's arguments, whether the Lender has met its burden of showing the sum is due and payable has not been determined under the Stipulation. The Stipulation was signed by the Trustee and the Lender and does not finally determine the Guarantor's obligation. Section 3(b) of the Stipulation fixes the Lender's Allowed Claim under the Loan Documents at $11,000,000. (*Id.* § 3(b).) Section 3(c) restricts the Debtor, the Debtor's estate and Trustee from asserting "any claim, counterclaim, setoff or defense of any kind, nature, or description which would in any way affect the validity, amount, enforceability, and non-avoidability of any part of the Allowed Claim." (*Id.* § 3(c).) As for the Guarantor, section 3(c) provides that "[n]othing in this Stipulation shall in any way whatsoever limit or reduce any obligations of the Guarantor concerning or with respect to the Loan Documents or the Lender's Allowed Claim, including without limitation, for any interest accruing under the Loan Documents after the Petition Date." (*Id.*) While section 3(c) limits the scope of the Stipulation, it does not define what obligations

the Guarantor in fact owes.[4]  Indeed, section 3(c) provides that "the Lender expressly reserves

any and all rights to pursue any claims against third parties, including without limitation any

guarantor of the Loans." (*Id.*)  While section 16(b) of the Stipulation sets forth the calculation of

Deficiency Claim, Reifer does not seek to have the Deficiency Claim severed or remanded and

admits the Deficiency Claim is an allowed claim against the Debtor.  (Reply ¶ 8.)   Reifer only

seeks to have the Guaranty Claim against himself remanded.  (*Id.*)  The Guaranty Claim is

governed by New York law and no aspect of the Guaranty Claim arises under the Bankruptcy

Code or under any order of this Court.  (Motion ¶¶ 20, 21.)  It is very clear that this contractual

claim between two non-debtor parties is non-core.  *See Cedar Park Healthcare, LLC v. Harden

Healthcare, LLC (In re Senior Care Centers, LLC)*, 611 B.R. 791, 800 (Bankr. N.D. Tex. 2019)

("Here, the claim is for a breach of guaranty by one non-debtor against another non-debtor.

There is little doubt that these claims are non-core.").

Next, the Lender argues that Reifer expressly waived all defenses of any kind in section

1.11 of the Limited Guaranties and therefore has no legal basis to challenge either his liability or

amount owed to Lender under the Limited Guaranties.  Reifer contends that although he may not

assert affirmative defenses, the claims have not been finally determined.  This Court finds

Reifer's argument persuasive.  A creditor suing on a guaranty must still prove a *prima facie* case.

*Hotel 71 Mezz Lender v. Mitchell*, 63 A.D.3d 447, 448 (1st Dep't 2009).  "'A guaranty . . . is a

contract of secondary liability . . . [A] guarantor will be required to make payment only when the

primary obligor has first defaulted.'"  *Terwilliger v. Terwilliger*, 206 F.3d 240, 246 (2d Cir.

2000) (quoting *Weissman v. Sinorm Deli, Inc.*, 88 N.Y.2d 437, 646 (1996)).  A creditor can make

---

[4]     The $11,000,000 stipulated amount represents a compromise between the Trustee and the Lender—the
Lender contended that because of the accrual of default interest, the figure should have been higher.  In determining
the amount of the Guaranty Claim, neither the Lender nor Reifer are bound by the stipulated amount in determining
the deficiency.

a *prima facie* case by "producing the mortgage documents and undisputed evidence of default."
*Fortress Credit Corp. v. Hudson Yards, LLC*, 78 A.D.3d 577, 577 (1st Dep't 2010).  If evidence
is disputed, a trial is necessary.  *Sterling Nat. Bank v. Biaggi*, 47 A.D.3d 436, 437 (1st Dep't
2008).  Simply stated, the Lender must prove not just the amount of any Deficiency Claim, but
that such sum is "due and payable" under the terms of the Limited Guaranties.

The Lender next argues that the Court should retain jurisdiction over the entire
proceeding because the Stipulation provides for the Trustee to share in recoveries from the
Lender's Deficiency Claim and the Trustee's avoidance claims against Reifer, all for the benefit
of the Debtor's estate.  Although section 18 of the Stipulation provides this sharing arrangement
between the Trustee and the Lender, this does not confer core jurisdiction.  The mere possibility
that litigation against Reifer may ultimately provide some benefit to the estate does not justify
retention of jurisdiction.  *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 683 (S.D.N.Y. 2011)
("Moreover, even though Plaintiffs' claims, if successful, would inure to the benefit of the
Funds' foreign estates, the mere fact that recovery would benefit the foreign estate is not
sufficient to confer core jurisdiction under these sections, contrary to Plaintiffs' assertions.").[5]

The Overruling Order also does not make any finding that the underlying adversary
proceeding or the Guaranty Claim are core matters.  Rather, the Overruling Order finds that the
9019 Motion is clearly a core proceeding, as it clearly "would have no existence outside of the
bankruptcy."  *See Robert Plan*, 777 F.3d at 596–97.

---

[5]    The Trustee's counsel acknowledged during the Hearing that the estate's financial interest in sharing any
recovery from Reifer does not convert the non-core Guaranty Claim into a core proceeding.

Accordingly, the Guaranty Claim is a noncore contractual claim and will be best determined by the New York Supreme Court.[6]

### C. Timely Adjudication

"There is no clear consensus as to what constitutes 'timely adjudication.'"  *Marine Midland Bank v. Zurich Ins. Co. (In re Olympia & York Maiden Lane Co. LLC)*, 1999 WL 58581, at *7 (Bankr. S.D.N.Y. Jan 25, 1999); *accord Vornado Realty Tr. v. Stop & Shop Supermarket Cos., Inc. (In re Bradlees, Inc.)*, 2005 WL 106794, at *7 (S.D.N.Y. Jan. 19, 2005). Courts have analyzed the following four factors in evaluating timely adjudication:

> (1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate.

*Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 580 (2d Cir. 2011); *accord Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 671 F.3d 261, 266 (2d Cir. 2012).

Here, the Lender's argument again centers on the sale process.  (Opposition ¶¶ 61–72.) According to the Lender, there is a backlog of the New York Supreme Court's calendar resulting from the suspension of foreclosure auctions pursuant to various State Court Administrative Orders made in response to the COVID-19 pandemic.  But the sale process will continue in this Court.  Determining whether there is any deficiency must await the sale of the property.[7]  Reifer

---

[6]    The Lender's other arguments also fail in that they only address whether the Court should abstain from the foreclosure proceeding as opposed to the Guaranty Claim.

[7]    Depending on the sale price, there may not be a deficiency.  Under the Stipulation, this Court will determine the Deficiency Claim *against the Debtor*.  The Stipulation does not provide that the Deficiency Claim so determined is enforceable against the Reifer under the Limited Guaranties.  The language of the Limited Guaranties does not provide that the Guarantor will be liable for future settlements between the Lender and the Debtor (here acting through the Chapter 7 Trustee).  The Lender included language in the Stipulation to preserve its right to seek

has explicitly stated that he does not seek to stop or interfere with the sale process; Reifer

confirmed at the Hearing that he only seeks relief relating to the Guaranty Claim.  Accordingly,

this factor also weighs in favor of mandatory abstention.

### III.    CONCLUSION

The Lender has failed to meet its burden in showing mandatory abstention is not

warranted.  Given that the mandatory abstention factors weigh in favor of Reifer, the Court finds

that abstention as to the Guaranty Claim is warranted and remands that claim to the New York

Supreme Court.

**IT IS SO ORDERED.**

Dated:    March 16, 2021
          New York, New York

*Martin Glenn*
_____
MARTIN GLENN
United States Bankruptcy Judge

---

*more* from Reifer than the Deficiency Claim computed under the Stipulation; it can hardly complain that Reifer, who is not a party to the Stipulation, may argue that the amount of any recoverable deficiency claim against him is less.  Those guaranties only provide that the Guarantor is liable for obligations and liabilities of the Debtor under the *Loan Documents*.  (*See* Limited Guaranties §§ 1.1, 1.2.)  Whether the Deficiency Claim of the Lender calculated under the Stipulation is also enforceable against the Guarantor is an issue of contract interpretation that should be decided by the New York Supreme Court.